1   Todd F. Jackson – CA State Bar No. 202598
    Claire Kennedy-Wilkins – CA State Bar No. 231897
2   LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
    1330 Broadway, Suite 1800
3   Oakland, CA 94612
    Email: tjackson@lewisfeinberg.com,
4       ckwilkins@lewisfeinberg.com
5   Telephone: (510) 839-6824
    Facsimile: (510) 839-7839
6   Steven G. Zieff – CA State Bar No. 84222
7   David A. Lowe - CA State Bar No. 178811
    Patrice L. Goldman – CA State Bar No. 142855
8   Email: sgz@reztlaw.com dal@reztlaw.com,
        plg@reztlaw.com
9   Rudy, Exelrod & Zieff, LLP
    351 California Street, Suite 700
10  San Francisco, CA 94104
    Telephone:    (415) 434-9800
11  Facsimile:    (415) 434-0513

12  [Additional Counsel Appear on Signature Page]
    Attorneys for Plaintiffs

13

14              IN THE UNITED STATES DISTRICT COURT

15          FOR THE NORTHERN DISTRICT OF CALIFORNIA

16  JASMIN GERLACH, and REGGIE          Case No. C-05-0585-CW
17  PLACE, on behalf of themselves and those
    similarly situated,

18              Plaintiffs,             **PLAINTIFFS' NOTICE OF MOTION**
                                        **AND MOTION FOR APPROVAL OF**
19  vs                                  ***HOFFMANN-LA ROCHE* NOTICE;**
                                        **MEMORANDUM OF POINTS AND**
20  WELLS FARGO & CO., WELLS FARGO      **AUTHORITIES IN SUPPORT THEREOF**
21  BANK, N.A., AND WELLS FARGO
    SERVICES COMPANY,

22              Defendants.

23
    WELLS FARGO BANK, N.A.,             Date:   January 13, 2006
24                                      Time:   10:00 a.m.
                Counterclaimant,        Place:  Courtroom 2, 4th Floor
25
26  vs.

27  JASMIN GERLACH,

28              Counterdefendant.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND STATEMENT OF ISSUES ................................................ 2

II.  FACTUAL BACKGROUND ........................................................................... 6

   A.   Wells Fargo Utilizes One Job Description for All BSEs and Categorically Classifies BSEs as Exempt ........................................................................................ 6

   B.   BSEs Perform Similar Job Duties ............................................................. 7

   C.   Wells Fargo & Co. is a Co-Employer of All BSEs .................................. 13

   D.   Defendants Have Refused To Disclose The Identities Of The Current And Former BSEs That Are The Subject Of This Lawsuit .................................. 14

III. LEGAL ARGUMENT ................................................................................ 14

   A.   Approval and Issuance of *Hoffmann-La Roche* Notice is Appropriate In This Case ........ 15

      1.   Sending Expedited Notice To Absent Class Members Fulfills The Broad Remedial Purposes Of The FLSA ................................................................ 15

      2.   Plaintiffs Are Entitled To Notice Based On A Very Minimal Showing That They Are Similarly Situated To Other Employees .................................. 16

      3.   Notice is Appropriate Because Plaintiffs are "Similarly Situated" to Other Current and Former BSEs .................................................................. 19

   B.   The Statute of Limitations Should Be Equitably Tolled .......................... 20

IV.  CONCLUSION ....................................................................................... 22

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

TABLE OF AUTHORITIES

Page

**CASES**

*Aguayo v. Oldenkamp Trucking*,
2005 U.S. Dist. LEXIS 22190 (C.D. Cal. 2005) ......................... 4, 16, 17, 18, 19

*Allen v. Marshall Field & Co.*,
93 F.R.D. 438 (N.D. Ill. 1982) .................................................. 17

*Ballaris v. Wacker Siltronic Corp.*,
2001 U.S. Dist. LEXIS 13354 144 Lab. Cas. (CCH) P34 (D. Or. 2001) ...... `17, 18, 20

*Bell v. Farmers Insurance Exch.*,
115 Cal. App. 4th 715 (2004) .................................................. 15

*Bradford v. Bed, Bath & Beyond, Inc.*,
184 F. Supp. 2d 1342 (N.D. Ga., 2002) ..................................... 15, 17

*Brown v. Money Tree Mortgage, Inc.*,
222 F.R.D. 676 (D. Kan. 2004) .............................................. 16, 17, 18, 19

*Camper v. Home Quality Management, Inc.*,
200 F.R.D. 516 (D. Md. 2000) .................................................. 17

*Chao v. A-One Medical Services*,
346 F. 3d 908 (9th Cir. 2003) ................................................. 14

*Church v. Consolidated Freightways, Inc.*,
137 F.R.D. 294 (N.D. Cal. 1991) ............................................. 4, 18

*Daggett v. Blind Enterprises of Oregon*,
1996 U.S. Dist. LEXIS 22465 (D. Or. Apr. 18, 1996) ..................... 17, 18

*De Asencio v. Tyson Foods, Inc.*,
130 F. Supp. 2d 660 (E.D. Pa. 2001) ........................................ 17

*Equal Employment Opportunity Commission v. Pan America World Airways,
Inc.*, 897 F. 2d 1499 (9th Cir. 1990) ......................................... 16

*In re Farmers Insurance Exchange BSEs' Overtime Pay Litigation*,
336 F. Supp. 2d 1077 (D. Or. 2004) .......................................... 15

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

<u>TABLE OF AUTHORITIES</u>

Page

*Garner v. G.D. Searle Pharm. & Co.,*
  802 F. Supp. 418 (M.D. Ala. 1991)........................................8, 18

*Harrison v. Enterprise Rent-A-Car,*
  1998 U.S. Dist. LEXIS 13131 (M.D. Fla. 1998).........................15

*Hipp v. Liberty Nat'l Life Ins. Co.,*
  252 F.3d 1208 (11th Cir. 2001) .....................................17

*Hoffmann-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ..............................................*passim*

*Hurley v. State of Oregon,*
  27 F.3d 392 (9th Cir. 1994)..........................................15

*Kane v. Gage Manufacturing Services, Inc.,*
  138 F. Supp. 2d 212 (D. Mass. 2001).............................17, 19

*Mooney v. Aramco Services Co.,*
  54 F.3d 1207 (5th Cir. 1995) ...................................16, 19

*Moss v. Crawford & Co.,*
  201 F.R.D. 398 (W.D. Pa. 2000)......................................15

*Owens v. Bethlehem Mines Corp.,*
  630 F. Supp. 309 (S.D. W.Va. 1986)..................................21

*Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,*
  645 F.2d 757 (9th Cir. 1981) ....................................20, 21

*Reab v. Electronic Arts, Inc.,*
  214 F.R.D. 623 (D. Colo. 2002) ..............................16, 17, 19

*Severtson v. Phillips Beverage Co.,*
  137 F.R.D. 264 (D. Minn. 1991) .....................................18

*Shaffer v. Farm Fresh, Inc.,*
  966 F.2d 142 (4th Cir. 1992) ........................................3

*Thiebes v. Wal-Mart Stores, Inc.,*
  1999 U.S. Dist. LEXIS 18649 (D. Or. 1999) ...................5, 17, 18

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

**PLAINTIFFS' NOTICE OF MOTION AND MOTION**                                  iii                        **CASE NO. C 05-0585 CW**
**FOR APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## TABLE OF AUTHORITIES

Page

*Thiessen v. General Electric Capital Corp.*,
267 F.3d 1095 (10th Cir. 2001) ......................................................... *passim*

*Wertheim v. State of Arizona*,
1993 U.S. Dist. LEXIS 21292 (D. Ariz. 1993) ................................................ 15

*Williams v. Sprint/United Mgmt. Co.*,
222 F.R.D. 483 (D. Kan. 2004) ................................................................ 17, 19

*Wynn v. National Broadcasting Company, Inc.*,
234 F. Supp. 2d 1067 (C.D. Cal. 2002) ....................................................... 16, 17

*Zhao v. Benihana*, 2001 U.S. Dist. LEXIS 10678
6 Wage & Hour Cas. 2d (BNA) (S.D.N.Y. 2001) ............................................. 17

**STATUTES**

29 U.S.C. § 216(b) ............................................................................ 1, 3, 15

29 U.S.C. §255(a) ................................................................................... 14

29 U.S.C. § 256(b) ................................................................................. 20

Federal Rule of Civil Procedure 23 ....................................................... 18

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2    NOTICE IS HEREBY GIVEN that on January 13, 2006, at 10 a.m., or as soon thereafter

3    as the matter may be heard, in Courtroom 2 of the above-entitled court, located on the 4th Floor at

4    Ronald V. Dellums Federal Building, 1301 Clay Street, Oakland, California, plaintiffs Jasmin

5    Gerlach and Reggie Place, for themselves and on behalf of all others similarly situated, will move

6    as follows, pursuant to *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989):

7    (1)    Pursuant to the Fair Labor Standards Act ("FLSA") and cases interpreting it, that

8    the Court conditionally certify this action as a representative collective action, 29 U.S.C. §

9    216(b);

10    (2)    Pursuant to the FLSA and cases interpreting it, that the Court facilitate and

11    authorize notice of this action to prospective collective action members, consisting of all present

12    and former employees of Wells Fargo & Co. and/or any of its subsidiaries, including Wells Fargo

13    Bank, N.A., and Wells Fargo Services Company (collectively "Wells Fargo"), who have held the

14    titles of or performed the duties of the positions known as Business Systems Consultants levels 2-

15    6, e-Business Systems Consultants levels 2-6, and/or Business Systems Analysts, at any time

16    from February 9, 2002 to the date of Court's Order (hereinafter "BSEs");

17    (3)    That the Court approve the proposed notice of this action and the consent form;

18    (4)    That the Court order Wells Fargo & Co., Wells Fargo Bank, N.A., Wells Fargo

19    Services Company, and all other subsidiaries of Wells Fargo & Co., to produce to plaintiffs'

20    counsel the names, addresses, alternate addresses, social security numbers, and all telephone

21    numbers of all BSEs; that such information shall be provided in Microsoft Excel format to

22    plaintiffs' counsel within 10 days of the date of the Court's order granting plaintiffs' Motion;

23    (5)    That the Court order that all BSEs shall have 120 days from the sending of Notice

24    to postmark their Consents to Join and mail such Consents to a Claims Administrator;

25    (6)    That the Court equitably toll the statute of limitations for all BSEs from the date

26    the Complaint was filed, February 9, 2005, through the Court-set deadline for receipt of Consents

27    to Join.

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    This motion is supported by the Memorandum of Points and Authorities in Support of

2    Plaintiffs' Motion for Approval of *Hoffmann-La Roche* Notice, the Declaration of David A.

3    Lowe in support thereof, the Declaration of Patrice L. Goldman in support thereof, the

4    [Proposed] Order and accompanying Notice and Consent to Join lodged herewith, the other

5    records, pleadings, and papers filed in this action; and upon such other documentary and oral

6    evidence or argument as may be presented to the Court at the hearing of this motion.

7

8                      **MEMORANDUM OF POINTS AND AUTHORITIES**

9

10   **I.      INTRODUCTION AND STATEMENT OF ISSUES**

11          By this motion, Plaintiffs Jasmin Gerlach and Reggie Place request leave to send

12   *Hoffmann-La Roche* notice to similarly situated Business Systems Employees ("BSEs") who are

13   or have been employed throughout the country by defendants Wells Fargo & Co., Wells Fargo

14   Bank, N.A., Wells Fargo Services Company, and any other subsidiaries of Wells Fargo & Co.

15   (collectively, "Wells Fargo" or "defendants") at any time since February 9, 2002. Notice and the

16   opportunity to opt in is appropriate in this case because the BSEs are all similarly situated with

17   respect to their Fair Labor Standards Act claim: all BSEs have uniform job descriptions, were

18   uniformly misclassified as exempt from overtime pay by defendants, and perform the same

19   nonexempt job duties.

20          The primary job duties of BSEs are maintaining and updating the business tools, such as

21   automated forms, computer applications, computer hardware, and electronic manuals and

22   documents, used internally by Wells Fargo's business groups. Wells Fargo calls these tools

23   "business systems." Although the tools may vary from business group to business group, the

24   primary job duties of the BSEs do not. Specifically, business groups tell BSEs when they need a

25   business tool altered or updated and approve a budget for the change. The BSEs then document

26   the scope of the needed change. As the project progresses, the BSEs review and document the

27   changes or updates, maintain the business tool, and communicate information between technical

28

RUDY, EXELROD & ZIEFF, L.L.P.
LAW OFFICES OF
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    workers and the business groups. Thus, all BSEs, across all business units, have the same core

2    job duties, and are required to follow the same guidelines in making any changes or updates to

3    business tools and to follow the same minimum requirements set forth in company-wide policies

4    and procedures

5         The Third Claim for Relief in plaintiffs' Second Amended Complaint ("SAC") is brought

6    as a collective action pursuant to the Fair Labor Standards Act ("FLSA").[1]   The FLSA expressly

7    authorizes workers such as plaintiffs to sue for unpaid overtime wages not only on their own

8    behalf, but also on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a

9    class action under Rule 23 of the Federal Rules of Civil Procedure, in which individuals are

10   members of a class until they affirmatively "opt out," each individual member (or "party

11   plaintiff") of a "collective action" under the FLSA must "opt in" by filing written consent.

12   Absent equitable or contractual tolling, the statute of limitations continues to run on each

13   individual's claim until he or she files his or her consent in the Court. *Id.* at §§ 216(b), 256(b).

14        The Supreme Court held in *Hoffmann-La Roche* that the named plaintiffs in FLSA

15   collective actions are entitled to discover the identity of all "similarly situated" individuals with

16   potential claims and to send court-approved notice to those potential plaintiffs informing them

17   about the lawsuit and their right to opt in by a specified deadline.[2]   *Hoffmann-La Roche Inc. v*

18

19   [1] The original Complaint was filed by Plaintiff Jasmin Gerlach, a resident of the State of
     Arizona, on February 9, 2005 stating three claims for relief: 1) violation of ERISA Section

20   502(a)(3) based on Wells Fargo & Co.'s failure to maintain records which accurately recorded
     and/or reported all hours worked by the BSEs; 2) violation of ERISA Section 502(a)(3) based on

21   Wells Fargo & Co.'s breach of its fiduciary duties by failing to credit overtime worked by the
     BSEs; and; 3) violation of the FLSA through improperly characterizing the BSEs as exempt from

22   the payment of overtime compensation and failing to pay them overtime pay for overtime hours
     worked.  The Complaint was amended on July 5, 2005 to add Wells Fargo Bank, N.A. as an

23   additional defendant.  On September 7, 2005, a Second Amended Complaint was filed adding
     Reggie Place, a resident of the State of California, as a second named plaintiff, adding Wells

24   Fargo Services Company as a third named defendant, and asserting additional claims for relief
     under California state laws.

25
     [2]  *Hoffmann-La Roche* was an Age Discrimination in Employment Act ("ADEA") case.

26   Because the ADEA expressly incorporates the FLSA's enforcement provisions, courts may look to
     ADEA collective action cases for standards regarding the interpretation and application of Section

27   216 the FLSA.  *See, e.g., Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 n. 5 (4th Cir. 1992)
     ("[S]ince the ADEA incorporates §16(b) of the FLSA into its enforcement scheme, the same rules

28   govern judicial management of class actions under both statutes").

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   *Sperling*, 493 U.S. 165, 172-74 (1989). The Supreme Court established this procedure to help

2   vindicate the important statutory rights protected by the FLSA and to further judicial efficiency

3   — both by facilitating the ability of individuals asserting similar claims to adjudicate their rights

4   before a single court at a single time, and by allowing that court to establish a fixed "cut-off" date

5   after which no new individual plaintiffs can join the existing action. *Id.* at 172. *Hoffmann-La*

6   *Roche* did not create any new standards for adjudicating substantive rights. It merely created a

7   procedural mechanism for identifying and notifying potential plaintiffs whose claims may be

8   similar to those of the individuals who had already joined the litigation.

9   The purpose of the notice is simply to alert potentially aggrieved individuals that if they

10  want to pursue a similar claim in the pending lawsuit they must file a Consent to Sue before the

11  judicially-set filing cut-off date. *Id.* at 172. Providing such notice is integral to realizing the

12  congressionally-intended benefits and efficiencies of the collective action. *See id.* at 169-70.

13  Accordingly, a motion for *Hoffmann-La Roche* notice is leniently granted early in the case

14  upon a minimal showing that there are other similarly-situated individuals who might wish to join

15  the present action. *See e.g., Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.

16  2001) (initial notice stage determination of whether plaintiffs are similarly situated "require[s]

17  nothing more than substantial allegations that the putative class members were together the

18  victims of a single decision, policy or plan"), *internal quotes and citation omitted; Aguayo v.*

19  *Oldenkamp Trucking,* No. CV F 04-6279, 2005 U.S. Dist. LEXIS 22190 at *9-*12 (E.D. Cal.

20  Oct. 3, 2005)[3] (allegations of complaint and plaintiff's declaration sufficient for favored issuance

21  of *Hoffman-La Roche* notice); *Church v. Consol. Freightways, Inc.*, 137 F.R.D. 294, 305 (N.D.

22  Cal. 1991) ("The similarly situated requirement of 29 U.S.C. § 216(b) is considerably less

23  stringent than the requirement of Fed. R. Civ. Proc. 23(b)(3) that common questions

24  predominate."), *quoting Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 n. 2 (E.D.N.Y.

25

26  [3] The *Aguayo* opinion constitutes findings and recommendations by a Magistrate Judge of

27  the Eastern District of California that were submitted on October 3, 2005 to the United States
    District Judge assigned to the case. Defendant in *Aguayo* filed Objections to the findings on

28  October 21, 2005.

1   1988); *Thiebes v. Wal-Mart Stores, Inc*, No. 98-802-KI, 1999 U.S. Dist. LEXIS 18649 at *6 (D.

2   Or. Dec. 1, 1999) (allegations of complaint coupled with discovery support issuance of *Hoffmann*

3   notice).

4       The twin goals of judicial efficiency and eradicating unlawful overtime practices are best

5   served by a procedure that advises individuals of their rights, tolls the statute of limitations on

6   their claims, and provides them a reasonable period of time to decide whether to join the existing

7   lawsuit. This notification procedure furthers the underlying statutory policies because it ensures

8   that plaintiffs with potentially valid FLSA claims are informed of their rights; and it furthers

9   judicial efficiency because it ensures that all similarly situated timely filers can have their claims

10  heard by the same court at the same time.

11      Notice is appropriate at this point in the litigation because the initial pleadings and

12  discovery produced to date are more than sufficient under the lenient standard applicable here for

13  a finding that the BSEs are similarly situated and, thus, entitled to *Hoffmann-La Roche* notice.

14  All Wells Fargo BSEs are "similarly situated employees" because: 1) they have all been

15  uniformly classified by Wells Fargo as "exempt" from the FLSA's overtime requirements based

16  on company-wide job descriptions; 2) they have all been denied overtime pay for all of their

17  overtime hours on the basis of this uniform "exempt" classification by Wells Fargo; 3) all BSEs

18  have the same primary job duties, functions and responsibilities; and 4) they all perform their

19  same basic primary duties according to the same uniform policies, guidelines and systems of

20  supervision and review imposed by Wells Fargo.

21      By this motion, plaintiffs request an order that all current and former BSEs classified as

22  exempt by Wells Fargo be provided with notice and opportunity to join this collective action

23  within 120 days of the issuance of the notice. *See Hoffmann-La Roche*, 493 U.S. at 172. Due to

24  Wells Fargo's refusal to provide contact information necessary to notify similarly-situated

25  employees of this action and of their right to opt in, plaintiffs also ask the Court to order that the

26  statute of limitations on their FLSA claims be equitably tolled as of February 9, 2005, the date of

27

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   the filing of the Complaint, through the Court-set deadline for receipt of Consents to Join [4]

2   Declaration of David A. Lowe in Support of Plaintiffs' Motion for Approval of *Hoffmann-La*

3   *Roche* Notice at ¶¶ 5, 9, 12. Because plaintiffs have made substantial allegations that the BSEs

4   are similarly situated with respect to both their role within Wells Fargo and their job duties, this

5   motion should be granted and this Court should conditionally certify the case to proceed as an

6   FLSA collective action.

## II.   FACTUAL BACKGROUND

### A.   Wells Fargo Wells Fargo Utilizes One Job Description for All BSEs and Categorically Classifies BSEs as Exempt

Although the named plaintiffs held the job title Business Systems Consultant ("BSC"),

documents and testimony produced by Wells Fargo show that there are other BSEs with the job

titles e-Business Systems Consultant ("eBSC") and Business Systems Analyst ("BSA") who

perform substantially similar job duties.[5] Exs. 1, 2, 13; Conley, 51:14-52:6; Knapp, 50:3-7.[6]

Wells Fargo utilizes a single global job description document to set forth the core job duties of all

---

[4] There are currently tolling agreements in effect; however, they do not toll the claims of all collective class members since the filing of the Complaint. Rather, defendants would only agree to an initial tolling agreement that commenced May 19, 2005 and ended September 16, 2005, and did not revive any claim that was barred by the passage of time as of May 19, 2005. When defense counsel agreed to extend the tolling agreement, they did so only through November 18, 2005, and then contended that the initial tolling agreement did not apply to any e-BSCs or to any BSCs or Business Systems Analysts employed at Wells Fargo Service Company prior to September 7, 2005. The parties did agree, however, that plaintiffs maintained the right to petition the Court for equitable tolling of the statute of limitations. Declaration of David A. Lowe in Support of Plaintiffs' Motion for Approval of *Hoffmann-La Roche* Notice at ¶¶11-12 and Exs. 36-37.

[5] For the most part, Wells Fargo uses the terms BSA and BSC interchangeably. *See, e.g.*, Knapp, 50:3-7. However, Wells Fargo acknowledges that in 1999 it employed some individuals as BSAs, separate from those employed with a BSC job title. Conley, 51:6-18; Gerlach 45:1-11. Wells Fargo denies that it employed individuals with the official BSA job title after 1999 and states that it has provided discovery as to those individuals who were classified as BSAs in 1999. *Id.* Defendants have only produced job descriptions for the BSC and e-BSC job titles and not for the BSA job title. Exs 1, 2, 13; Goldman Declaration at ¶38.

[6] All deposition excerpts are attached, in alphabetical order, to the Declaration of Patrice L. Goldman, starting at Exhibit 18. All referenced exhibits are attached sequentially as cited.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    BSEs throughout Wells Fargo & Co. and its subsidiaries.[7] Exs. 1, 2, 13, 15 at D026053; Conley,

2    77:3-18, 81:14-20, 95:5-11; Kruse, 64:17-65:8; Knapp, 65:2-4; Rietz, 60:1-7; Kehoss, 63:4-8;

3    Fielding, 73:7-22, 80:25-81:22, 82:7-12, 86:23-87:9; Finstad, 84:7-19; Beasley 84:1-5, 86:11-23;

4    Salazar, 65:9-19; Gerlach, 265:23-266:7. Wells Fargo has also categorically classified all BSCs

5    and eBSCs in levels 2 through 6 as exempt from the payment of overtime compensation.[8] Exs. 1,

6    2, 13; Conley, 110:23-112:1; Kehoss, 63:24-64:2; Kruse, 65:18-21; Rietz, 137:23-25; Knapp,

7    87:1-5; Fielding, 83:18-24; Salazar, 123:4-10, Beasley 248:8-249:13.

8         All BSEs throughout Wells Fargo are classified as exempt on the basis of functional job

9    titles defined by Wells Fargo's uniform job descriptions. *See* Exs. 1, 2, 13. Wells Fargo

10   classified these positions as exempt in 1999 and has never revisited the matter. Conley, 116:14-

11   117:12. Accordingly, Wells Fargo neither tracks the number of hours that BSEs work, nor pays

12   them premium compensation for any overtime hours they work in the manner required under the

13   FLSA as to non-exempt employees. Answer to Second Amended Complaint at ¶¶ 13, 14, 16;

14   Fielding, 154:13-15, 156:6-157:19; Finstad, 172:21-25; 176:4-9; Knapp, 228:14-19; Kehoss,

15   86:16-19; Kruse, 161:15-21; Beasley, 244:8-25. Wells Fargo's BSEs regularly work more than

16   forty hours per week. Gerlach, 243:16-18 (typically worked at least 50 hours a week); Place,

17   137:25-138:19 (typically worked an average of 60 hours per week); Paguio, 132:3-18.

18        **B.    BSEs Perform Similar Job Duties**

19        In addition to being uniformly classified as exempt based on their company-wide job

20   descriptions, all BSEs serve a similar core function at Wells Fargo. BSEs are ground level

21

22   [7] Wells Fargo also uses company-wide functional job titles to identify the job duties of
     employees. According to Wells Fargo's corporate policy on job families, functional job titles,
23   such as BSC, e-BSC, and BSA, "identify the main responsibilities of the job." Ex. 17 at
     D056321. *See also* Ex. 15 at D026121 (functional job titles "identify the main responsibilities of
24   the job"); Ex. 17 at D056282. Indeed, the Wells Fargo global job descriptions and functional job
     titles do describe a number of duties that are uniformly performed by all BSEs, though plaintiffs
25   contend that the language used in the job description characterize these duties inaccurately and
     exaggerate the nature of the actual duties performed.

26

27   [8] Level 1 BSCs and e-BSCs are classified as non-exempt from the payment of overtime
     compensation and are not the subject to this lawsuit. Exs. 1, 2, 13.

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1  workers in Wells Fargo's business groups (*i.e*, Human Resources, Consumer Finance, Retail

2  Banking). Conley, 67:15-68:2. They all perform the same core job duties: to operate and

3  maintain the technology tools used internally by those groups and to communicate between the

4  business groups and Wells Fargo's technical workers.[9] Conley, 54:20-55:5; Lutmer, 11:9-15;

5  Travis, 33:13-34:6; Fielding, 73:7-22, 80:25-81:22, 82:7-12, 86:23-87:9.

6         Although the tools – "business systems" in Wells Fargo parlance – that BSEs work on

7  may vary according to the business groups that they are servicing, the core tasks performed by

8  the BSEs remain the same throughout the company. Gerlach, 63:20-64:10; Travis, 101:19-103:4;

9  Fielding, 141:14-142:8. BSEs in the corporate Human Resources group might work on

10  automated forms, such as W-2 Forms, whereas BSEs in the Enterprise Field Operations group

11  may maintain hardware or desktops that are used by retail banks. Knapp, 155:11-156:23;

12  Beasley, 46:13-24, 47:10-16. But regardless of which business group they are assigned to or

13  what business system they are working on, all BSEs have the same core function to work with the

14  business group and the technical employees to maintain and update those tools and to provide

15  routine support. Travis, 101:19-103:4; Fielding, 86:8-14, 141:14-142:8; Gerlach, 63:20-64:10;

16  Knapp, 154:3-10, 154:20-24; Place, 53:14-54:15, 56:5-9, 80:1-5, 80:10-23, 140:7-15.

17         As set forth below, when a business group has a tool that it needs serviced, BSEs are

18  assigned to gather information about the aspects of the business system that need to be updated or

19  changed, the other systems that will be impacted by this update or change, and the scope of the

20  update or change. Knapp, 96:12-16; Place, 64:14-65:3; Salazar, 132:2-12; Gerlach, 250:1-10;

21  Travis, 33:13-34:6. BSEs gather this information by speaking to individuals from the involved

22  business and technical groups and then document it in pre-existing templates and according to

23  Wells Fargo's uniform policies and procedures. Fielding, 106:10-15, 141:14-142:8; Place,

24  64:14-65:3; Knapp, 154:3-10, 154:20-24,157:24-158:5; Travis, 33:13-34:6, 104:22-105:1; Kruse,

25

26         [9] The merits of plaintiffs' FLSA overtime claims are not at issue in this motion. *See
Garner v G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 423 n.3, 4 (M.D. Ala. 1991); *Thiessen*,

27  267 F.3d at 1106-07. However, the facts pertaining to their job duties are relevant for the limited
purpose of demonstrating that plaintiffs are similarly situated to other BSEs, and for that reason

28  are briefly set forth below.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   95:16-20. BSEs then obtain the requisite approvals from the requesting business group and the

2   technical staff. Fielding, 99:7-16, 132:2-7, 139:21-140:3; Finstad, 169:13-19; Knapp, 161:1-7,

3   176:14-177:1, 193:5-7; Kehoss, 97:3-14, 101:18-24; Kruse, 116:18-21; Place, 49:5-12.

4       If the change is not complex, the BSE may implement the change once it has been

5   approved. Gerlach, 162:2-6, 208:5-16, 210:16-25, 211:9-21, 241:15-22; 242:13-20; Place, 44:6-

6   21. If the change is complex or highly technical, it will be implemented by the technical staff.

7   Place, 51:21-52:4; Kehoss, 76:2-16. During and after the implementation of the change or

8   update, BSEs review and document whether the approved change or update is performing as

9   expected. Knapp, 62:22-24. BSEs do not approve the content of the systems they work with, nor

10  do they approve the scope of their work on a given system or the budget for any system projects.

11  Gerlach, 208:5-16, 210:16-25, 211:9-21; Place, 41:10-42:18; Lutmer, 60:9-20; Beasley, 97:23-

12  98:18; Knapp, 84:2-6, 84:16-19, 93:16-19, 159:22-24, 184:1-3, 221:6-12; Kruse, 70:11-17,

13  71:11-14

14      This work is required in various departments through the Wells Fargo corporate structure

15  to ensure that Wells Fargo's business tools function properly. Throughout Wells Fargo, BSEs

16  perform substantially similar core job functions, regardless of their grade level, and follow Wells

17  Fargo's global procedures for how that work will be performed and presented, including, in many

18  cases, using company mandated templates that define the scope and nature of their work.[10]

19  Fielding, 96:14-19, 97:8-10; Kehoss, 71:13-15; Lutmer, 69:4-8, 70:24-71:2, 83:7-11; Kruse,

20  82:5-13; Knapp, 174:2-17, 198:14-19, 200:3-4; Travis, 101:19-103:4, 111:24-112:5. This

21  includes performing their job duties according to Wells Fargo's company-wide directives

22

23      [10]  The global job descriptions used by Wells Fargo do describe the core job duties, set

24  forth above, that are performed by BSEs, albeit in corporate terms that exaggerate the nature of
    the actual duties performed. *See*, Exs. 1, 2, 13. For instance, the above described duties of
25  information gathering ("███████████████████████████████████████████████████████████████
    ███████████"), documentation of project requirements in templates described above is contained in
26  the job duties ("█████████████████████████████████████████████████████████████████████████

27  ██████████████████████████████████████"), and review and documentation of approved
    changes ("███████████████████████████████████████████████") are all described in
28  exaggerated terms in the job descriptions. Exs. 1, 2, 13.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    regarding project and change management. Ex. 5 at D026710-11; Ex. 10 at D051835-51975; Ex.

2    16 at D026753-26930; Fielding, 96:14-25, 97:8-10, 97:18-22; Place, 47:19-24; Lutmer, 83:7-11;

3    Kruse, 82:5-13; Knapp, 137:18-19; Beasley 150:13-23; Gerlach, 265:5-13.

4        For instance, the Wells Fargo Corporate Project Methodology ("CPM") and its successor,

5    the Enterprise Project Methodology ("EPM"), set forth a standardized, written development

6    process that Wells Fargo uses for all projects, regardless of size, and is generally a blueprint for

7    how project tasks should be completed for both technology and non-technology projects. Ex. 4 at

8    D026683-84; Ex. 5 at D026699; Ex. 10 at D051804; Kehoss, 70:9-12; Travis, 116:11-21; Kruse,

9    77:6-16; Knapp, 129:11-16, 132:6-17; Beasley, 118:8-25. The EPM and CPM contain minimum

10   requirements that must be met on all projects. Ex. 4 at D026684 ("All technology and non-

11   technology Projects managed throughout WF&C must follow the compliant project management

12   methodology that meets the core requirements as defined in the Corporate Project Methodology

13   Guidebook (CPM)."); Ex. 5 at D026699; Ex. 10 at D051805; Fielding, 64:24-65:11, 66:20-67:7;

14   Kehoss, 71:8-12; Knapp, 133:4-8; Travis, 115:9-20, 116:11-21; Beasley, 129:7-11. A BSE

15   involved in a project is expected to know these minimum methodologies. Travis, 111:24-25. *See*

16   *also* Ex. 4 at D026684 ("It is a requirement of each line of business to know the compliant

17   Corporate Project Methodology."). Although the EPM and CPM provide that an individual

18   business unit may draft its own methodology documents, the methodology must meet the

19   minimum requirements set forth in the corporate project methodology. *Id.* at D026684

20   ("Although some Lines of Business maintain their own project management methodology, it is

21   not considered a violation of this Policy as long as their project management methodology

22   incorporates the core requirements and deliverables as defined in the CPM Guidebook."); Ex. 5 at

23   D026699; Ex. 10 at D051805; Fielding, 65:21-66:1, 94:11-24; Knapp, 133:9-15; Rietz, 92:15-16,

24   92:24-93:2; Kehoss, 74:2-11.

25       The EPM and CPM set forth the steps that must be taken when a division of Wells Fargo

26   requests an update or change to a business system and govern all aspects of a project, from its

27   request to its completion. Exs. 5, 10; Fielding, 64:24-65:11. These steps include the completion

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    of a number of required deliverables, such as a business requirements document and a statement

2    of work. Ex. 4 at D026682 ("Within the CPM Guidebook, there are specific deliverables

3    assigned to each phase within the project Life Cycle according to risk level of the Project."); Ex

4    5 at D026708-09, D026718-21; Exs. 6, 7, 9; Ex. 10 at D051817-21, D051856-89, D051905-06;

5    Knapp, 135:1-9, 174:2-17, 177:19-22, 198:10-13; Gerlach, 106:6-107:1; Kehoss, 71:4-7; Kruse,

6    83:14-17; Lutmer, 82:10-20, 86:11-14.

7        BSEs assist in this process by, among other things, speaking with other employees to

8    gather information regarding the nature of the change requested and the business system

9    involved, the options for making the change, and the other business systems that may be affected

10   by the change. Fielding, 106:10-15, 141:14-142:8; Place, 64:14-65:3; Knapp, 154:3-6, 154:20-

11   24,157:24-158:5; Travis, 33:13-34:6, 104:22-105:1; Kruse, 95:16-20; 250:1-10. The BSEs then

12   compile this information, obtain the necessary approvals, and present it in a manner which

13   complies with the requirements of the EPM and CPM. Place, 36:14-20; Fielding, 99:7-16. The

14   EPM and CPM provide templates for use in the completion of these deliverables, which are often

15   used by BSEs in carrying out their job duties. Ex. 5 at D026710-11; Ex. 10 at D051835-51975;

16   Ex. 16 at D026753-26930; Fielding, 96:14-25, 97:8-10, 97:18-22; Place, 47:19-24; Lutmer, 83:7-

17   11; Kruse, 82:5-13; Knapp, 137:18-19; Beasley, 150:13-23; Gerlach, 265:5-13.

18       The information from these deliverables may then used by other non-BSE employees,

19   such as developers, who are often responsible for technically implementing the requested change

20   or project. Kehoss, 76:2-16; Place, 49:5-50:21. During and after the implementation of the

21   change, BSEs assist with testing the change – the plans for and results of which are also

22   documented according to the requirements of the EPM and CPM. Ex. 4 at D026709; Ex. 10 at

23   D051819-20.

24       Wells Fargo has also established uniform company-wide change management procedures

25   and standards, as set forth in the Enterprise Change Management guidebook ("ECM"), and

26   requires BSEs to adhere to these procedures and standards. Ex. 8; Paguio, 127:1-128:8.

27   Although business units are permitted to draft their own change management procedures, these

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

must meet the minimum requirements of the ECM. Ex. 8 at D026337. The ECM requires BSEs to, among other things, complete change requests. *Id.* at D026355-59.

A change request is a "mechanism used to request, track, schedule, communicate, and approve changes." *Id.* at D026355. Any changes to any production system at Wells Fargo, (i.e., any technology, hardware or software, or infrastructure—the systems on which BSEs work) must follow a detailed change management process that complies with the minimum requirements of Wells Fargo's ECM, in order to ensure uniformity and consistency in the system throughout Wells Fargo. Ex. 8 at D026336 ("█████████████████████████████████████████████████████████████████████████████."); Travis, 111:13-23, 117:14-118:15, 118:24-119:9; Lutmer, 84:20-85:7, 85:17-19; Kruse, 85:25-86:7; Knapp, 167:5-9, 168:8-22, 171:7-23, 179:2-16.

This process includes detailed requirements regarding the approvals necessary for system changes. Ex. 8 at D026382-87. ("████████████████████████████████████████████████████████████████████████████████████████████████████") (emphasis in original). Compliance with the ECM is audited on a quarterly basis. *Id.* at D026388.

In addition to having similar core job duties, BSEs are systematically evaluated through a single performance review system, the Wells Fargo Premier Performance Evaluation ("PPE") program. Ex. 11 at D026231; Kehoss, 88:10-4; Knapp, 91:3-10. Formal reviews under the PPE program take place on at least an annual basis and are documented in a standardized evaluation form. Ex. 4 at D026548; Ex. 11 at D026235, D026247-48; Kehoss, 88:10-14; Knapp, 91:3-10; Lutmer, 78:14-20; Beasley, 63:18-64:2. BSEs' performance on their annual PPE reviews affects their rate of pay. Ex. 4 at D026545; Ex. 14 at D008462; Knapp, 47:14-20, 233:11-13; Kruse, 165: 6-15; Finstad, 116:14-117:10; Beasley, 249:21-23.

As set forth above, BSEs share uniform job descriptions and are uniformly classified as "exempt" by Wells Fargo. In addition, they perform the same core job functions, according to

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   uniform Wells Fargo policies and procedures regarding project and change management.

2   Furthermore, BSEs are supervised and reviewed under a uniform performance evaluation

3   program. In sum, the discovery that has been conducted in this case to date demonstrates that

4   BSEs are a cohesive group of employees that are treated as such by defendants.

5         **C.**    **Wells Fargo & Co. is a Co-Employer of All BSEs**

6         Defendant Wells Fargo & Co. is a financial services organization and is the parent

7   corporation of defendants Wells Fargo Bank, N.A. and Wells Fargo Services Company, both of

8   which are corporations providing banking services throughout the United States. Answer to

9   Second Amended Complaint at ¶¶ 22-24; Conley, 34:24-35:1. Documents produced by

10   defendants indicate that they have directly employed more than 3,100 individuals as BSEs during

11   the relevant time period, from February 9, 2002 to the present.[11] Declaration of Patrice L.

12   Goldman in Support of Plaintiffs' Motion for Approval of Hoffmann-La Roche Notice at ¶ 37.

13   Plaintiffs have alleged that, regardless of the formal employment arrangement for individual

14   BSEs, Wells Fargo & Co. is a co-employer of all BSEs in all of its subsidiaries within the

15   meaning of the FLSA.[12] SAC at ¶ 8. Indeed, the documents purporting to establish the

---

16

17   [11] This number is based on information produced by Wells Fargo regarding the BSC & BSA job titles. Wells Fargo has not provided information regarding the number of individuals employed as e-BSCs during the relevant time period. Nor does it appear that Wells Fargo has produced information regarding any BSE employed at Wells Fargo Services Co. prior to its merger with Wells Fargo Bank, N.A. Written discovery is pending on this issue. Wells Fargo has also failed to produce any information regarding any BSEs employed by subsidiaries of Wells Fargo & Co. other than Wells Fargo Bank, N.A. and Wells Fargo Services Co.

18

19

20

21   [12] Plaintiffs have alleged in their Second Amended Complaint that that individuals holding the title of BSC, e-BSC and BSA have been employed in various other Wells Fargo & Co. subsidiaries. SAC at ¶¶8-9. Documents produced by defendants supports this allegation. See, Ex. 12. Plaintiffs are also currently pursuing discovery on this issue. Goldman Declaration at ¶37. Additionally, as set forth *infra*, discovery produced to date indicates that Wells Fargo & Co. and its subsidiaries are effectively run as one large organization governed by the same rules. Travis, 44:4-7 (Wells Fargo & Company is the parent holding company and all other Wells Fargo companies and businesses roll up to that); Knapp, 28:25-29:17, 32:5-10, 32:12-15, 32:22-33:1; 78:24-79:10, 100:1-10 (Corporate HR controls HR policies for all Wells Fargo entities); Travis, 103:18-21 (The Wells Fargo Services Program Office "is an organization that is responsible for project methodology and managing all the project oversight"); Travis, 13:18-14:3 (The same software system is in place across all Wells Fargo entities); Lutmer, 69:21-70:1 (The Code of Ethics and Business Conduct applies enterprise-wide), 70:5-8 (The policy on Electronic Communications Systems Use applies enterprise-wide), 70:24-71:2 (The Handbook for Wells Fargo Team Members and the Handbook for Wells Fargo Team Supervisors applies to

22

23

24

25

26

27

28

1  functional job titles, duties, and FLSA classifications for BSEs are plainly identified as Wells

2  Fargo & Co. corporate documents for use by all of its subsidiaries. Exs. 1, 2, 13.

### D. Defendants Have Refused To Disclose The Identities Of The Current And Former BSEs That Are The Subject Of This Lawsuit

The named plaintiffs have made efforts to identify and locate other current and former

BSEs for the purpose of giving them notice of this proposed collective action, however plaintiffs'

efforts have been hampered by their lack of access to a list of current and former employees.

Plaintiffs have repeatedly sought this information from defendants, but Wells Fargo has

steadfastly refused to provide it. *See* Lowe Decl. ¶¶ 3-9.

## III. LEGAL ARGUMENT

The Court should approve notice to be distributed to all individuals who worked for Wells

Fargo as BSEs at any time during the relevant time period – from the earliest date covered by the

first pay date falling after February 9, 2002 through the date one week before notice is to be

mailed [13] Notice is appropriate at this early stage of the case because the initial pleadings and

preliminary discovery show that all Wells Fargo BSEs are "similarly situated employees": they

all share uniform job descriptions; they have all been classified by Wells Fargo as "exempt" from

the FLSA's overtime requirements based on their job positions; they have all been denied

overtime pay for all of their overtime hours on the basis of this uniform "exempt" classification

by Wells Fargo; they all have the same primary job duties, functions and responsibilities; and

employees enterprise-wide); Beasley, 145:10-15 (Corporate policies apply to everyone under
Wells Fargo umbrella)

[13] Plaintiffs allege that Wells Fargo's conduct constitutes a "willful" violation of the
FLSA under 29 U.S.C. § 255(a), for which the statute of limitations is three years. 29 U.S.C.
§255(a). Ultimately, on the merits, the test for whether a violation is willful will be whether
Wells Fargo "knew or showed reckless disregard for the matter of whether its conduct was
prohibited by the [FLSA]." *Chao v. A-One Med. Servs.*, 346 F.3d 908, 918 (9th Cir. 2003). As
discussed below, *see infra*, Section III B, the statute of limitations should be equitably tolled as of
February 9, 2005, the date on which plaintiffs filed the complaint, because equitable tolling is
appropriate where, as here, similarly situated plaintiffs, through no fault of their own, have been
unable to opt in to the lawsuit. In this case, Wells Fargo's failure to respond to plaintiffs'
requests for the contact information for potential collective action members – expressly made for
the purpose of notifying them of the existence of this lawsuit – has prevented similarly-situated
employees from learning of their overtime rights and the existence of this lawsuit.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

they all perform their primary duties according to the same uniform policies, guidelines and systems of supervision and review.[14]

### A.    Approval and Issuance of *Hoffmann-La Roche* Notice is Appropriate In This Case

#### 1.    Sending Expedited Notice To Absent Class Members Fulfills The Broad Remedial Purposes Of The FLSA

An employee alleging violations of the FLSA may bring an action on behalf of all "other similarly situated employees." 29 U.S.C. § 216(b). Such collective actions are favored under the law: they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and provide plaintiffs with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche*, 493 U.S. at 170.

Unlike a Rule 23 class action, plaintiffs in an action under the FLSA must affirmatively opt in to be covered by the suit. 29 U.S.C. § 216(b); *Thiessen*, 267 F.3d at 1102. If an individual employee does not opt in by filing a written consent, he or she will not be bound by the outcome, whether or not it is favorable, and may bring a subsequent private action. *Equal Employment*

---

[14] In short, this is an ideal FLSA collective action case, and the lenient criteria for ordering *Hoffmann-La Roche* notice are easily satisfied here. *See Hoffmann-La Roche*, 493 U.S. at 170 ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . [unlawful] activity."). Indeed, in numerous other overtime cases involving an employer's assertion that a class of employees were exempt administrators, courts have held that the requirements for FLSA collective actions and/or the more exacting requirements for class actions were met. *See, e.g.*, *In re Farmers Insurance Exch. Overtime Pay Litig.*, 336 F. Supp. 2d 1077, 1082 (D. Or. 2004) (certifying collective action involving auto, property and liability claims representatives and granting class certification in seven state law class actions based on parties' stipulation); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 411 (W.D. Pa. 2000) (FLSA collective action involving insurance catastrophic claims adjusters); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 720 (2004) (class action involving auto, property and liability claims representatives); *Hurley v. State of Oregon*, 27 F.3d 392 (9th Cir. 1994) (granting plaintiffs' motion for leave to mail notice in case alleging that class of employees was not exempt from overtime requirements because they were not paid on a salary basis); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1352 (N.D. Ga., 2002) (denying defendant's motion to decertify collective action where department managers alleged they performed largely menial tasks and were not "exempt" managers); *Harrison v. Enterprise Rent-A-Car*, 1998 U.S. Dist. LEXIS 13131 at *12-*14 (M.D. Fla. 1998) (notice to similarly situated managers who claimed they had been wrongfully classified as exempt); *Wertheim v. Arizona*, 1993 U.S. Dist. LEXIS 21292 at *6-*8 (D. Ariz. Sept. 30, 1993) (certifying collective action with respect to claim that employees' job duties were not of the nature to fall within any FLSA exemption).

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    *Opportunity Comm'n v. Pan Am. World Airways, Inc.*, 897 F.2d 1499, 1508 n.11 (9th Cir. 1990).

2         Because the substantial benefits of FLSA collective actions "depend on employees

3    receiving accurate and timely notice concerning the pendency of the collective action," the FLSA

4    grants the Court authority to manage the process of joining such employees in the action,

5    including the power to authorize notice and monitor preparation and distribution of the notice.

6    *Hoffmann-La Roche*, 493 U.S. at 169-72; *id.* at 173 ("The broad remedial goal of the statute

7    should be enforced to the full extent of its terms.") "Court authorization of notice serves the

8    legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite

9    disposition of the action." *Id.* at 172; *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628 (D.

10   Colo. 2002) (conditional certification for notice purposes was appropriate where plaintiffs had

11   made "substantial allegations" and conditional certification would allow "significant economies"

12   to be achieved).

**2.  Plaintiffs Are Entitled To Notice Based On A Very Minimal Showing**
**That They Are Similarly Situated To Other Employees.**

13

14        The Court may order and facilitate the sending of notice applying a lenient standard based

15   on a minimal showing of "other similarly situated employees."

16        At the "notice stage" of a FLSA collective action – the stage at issue on this motion – the

17   Court makes a determination of whether a collective action should be certified for purposes of

18   sending notice of the action to potential class members.[15] *Wynn v. National Broadcasting*

19   *Company, Inc.*, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002). For certification at the notice

20   stage, the Court requires nothing more than substantial allegations, generally supported by

21   declarations and/or discovery, that the putative collective action members are "similarly

22   situated." *Thiessen*, 267 F.3d at 1102; *Aguayo v. Oldenkamp Trucking*, 2005 U.S. Dist. LEXIS

23   22190 at *8-*9 (C.D. Cal. 2005); *Brown*, 222 F.R.D. at 679; *Reab*, 214 F.R.D. at 628-29. The

24

25   _____

26   [15]  Courts use a two-stage process to determine whether to certify a collective action. *See*
     *Wynn*, 234 F. Supp. 2d at 1082; *Thiessen*, 267 F.3d at 1102-103; *Mooney v. Aramco Services*
27   *Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995); *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D.
     676, 678-79 (D. Kan. 2004).

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1  standard for certification at this notice stage is a lenient one that typically results in the issuance

2  of *Hoffmann-La Roche* notice. *Brown*, 222 F.R.D. at 679; *see Thiessen*, 267 F.3d at 1103

3  (upholding conditional certification at notice stage where district court had applied "a fairly

4  lenient standard for what constituted 'similarly situated'"); *Aguayo*, 2005 U.S. Dist. LEXIS

5  22190 at *9-*10 (proof required at notice stage much less than that required at trial); *Wynn*, 234

6  F.Supp.2d at 1082.

7        Plaintiffs meet their notice stage burden by presenting "nothing more than substantial

8  allegations that the putative class members were together the victims of a single decision, policy,

9  or plan." *Thiessen*, 267 F.3d at 1102, *internal quotes and citation omitted*; *see Brown*, 222

10  F.R.D. at 679; *Williams*, 222 F.R.D. at 485; *Reab*, 214 F.R.D. at 628; *see also Kane v. Gage Mfg*

11  *Servs., Inc.*, 138 F.Supp.2d 212, 214-15 (D. Mass. 2001). In order to be "similarly situated,"

12  "[t]he positions and claims of the employees need not be identical." *Daggett v. Blind Enters. of*

13  *Oregon*, 1996 U.S. Dist. LEXIS 22465 at *17 (D. Or. Apr. 18, 1996); *Ballaris v. Wacker*

14  *Siltronic Corp.*, 2001 U.S. Dist. LEXIS 13354 at *2, 144 Lab. Cas. (CCH) P34,351 (D. Or.

15  2001), *rev'd on other grounds*, 370 F.3d 901; *Thiebes*, 1999 U.S. Dist. LEXIS 18649 at *6 (D.

16  Or. 1999); *Bradford*, 184 F. Supp. at 1446; *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208,

17  1217 (11th Cir. 2001). The Court may determine that plaintiffs and others are similarly situated

18  based only on the allegations of the complaint and a few declarations or depositions. *See, e.g.*,

19  *Brown*, 222 F.R.D. at 680 (two affidavits); *Williams v. Sprint/United Mgmt. Co.*, 222 F.R.D. 483,

20  487 (D. Kan. 2004) (allegations in complaint were "more than sufficient to support provisional

21  certification"); *Reab*, 214 F.R.D. at 628 (allegations in complaint); *Allen v. Marshall Field &*

22  *Co.*, 93 F.R.D. 438, 442-45 (N.D. Ill. 1982) (allegations in complaint sufficient); *Ballaris*, 2001

23  U.S. Dist. LEXIS 13354 at *3-*5 (two affidavits); *De Asencio v. Tyson Foods, Inc.*, 130 F. Supp.

24  2d 660, 663 (E.D. Pa. 2001), *rev'd on other grounds*, 342 F.3d 301 (four affidavits); *Camper v.*

25  *Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519-21 (D. Md. 2000) (sworn testimony from two

26  deponents and two declarations); *Zhao v. Benihana*, 2001 U.S. Dist. LEXIS 10678 at *12-*13, 6

27  Wage & Hour Cas. 2d 1881 (BNA) (S.D.N.Y. 2001) (one affidavit based on plaintiff's "best

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1    knowledge"); *Aguayo*, 2005 U.S. Dist. LEXIS at *11-12 (allegations in complaint and declaration

2    of the plaintiff demonstrate plaintiff and other class members are similarly situated).[16]  If this

3    lenient standard is met, the district court "conditionally" certifies the class and facilitates the

4    process by which putative class members are given notice and the opportunity to opt-in, with the

5    case proceeding as a representative action throughout the course of discovery.[17]

6    Only at the conclusion of discovery, often prompted by a motion to decertify, does the

7    Court make a second stage determination of whether the plaintiffs are similarly situated using a

8    stricter standard.  *Thiessen*, 267 F.3d at 1102-03; *Brown*, 222 F.R.D. at 679; *Aguayo*, 2005 U.S.

9    Dist. LEXIS at *5-6.  "During this 'second stage' analysis, a court reviews several factors,

10   including the disparate factual and employment settings of the individual plaintiffs; the various

11

---

12   [16] Notice obviously "need not await a final determination that the 'similarly situated' requirement is satisfied.  Such a requirement would indeed place an ADEA [or FLSA] action in the 'chicken and egg' limbo . . . ."  *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991).  Indeed, the requirements for finding that others are similarly situated for purposes of a collective action are far less stringent than the requirements for certifying a class action under Federal Rule of Civil Procedure 23.  *Church*, 137 F.R.D. at 306); *Daggett*, 1996 U.S. Dist. LEXIS 22465 at *17; *Ballaris*, 2001 U.S. Dist. LEXIS 13354 at *3-*5; *Thiebes*, 1999 U.S. Dist. LEXIS 18649 at *6-7.

Many of the FRCP 23 protections are not necessary for a § 216(b) class action given the "opt in" requirement.  A plaintiff who "opts in" presumably has decided that the benefits of joining the class outweigh any benefits of bringing an individual action.  In other words, there is no need for the court to determine whether a class action is the most efficient method to proceed because each individual plaintiff has already concluded that a sufficiently common issue of fact or law exists and that he or she will be adequately represented.  In addition, the due process protections of FRCP 23 are not as crucial when absent class members are not bound by the judgment.

21   *Daggett*, 1996 U.S. Dist. LEXIS 22465 at *15-16; *see also Church*, 137 F.R.D. at 306.

22   [17] Issuance of notice does not require any adjudication of the merits of plaintiffs' claims, but rather depends solely upon the existence of similarly situated employees who are likely to assert similar claims.  *See Garner*, 802 F. Supp. at 423 n.3, 4; *see also Thiessen*, 267 F.3d at 1106-07 (district court erred in reaching the merits of whether company's policy caused adverse employment actions at collective action certification stage).  "The court is not required, nor would it be well-advised, to adjudicate this case on its merits before resolving the issue of class notification.  A primary purpose of notification is to locate other similarly-situated employees who may wish to bring their claims to the court's attention *before* this litigation is resolved."  *Garner*, 802 F. Supp. at 423 n.4 (emphasis in original).  "To impose a strict standard of proof [at the certification stage] would unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the . . . FLSA."  *Id.* at 422-423 (*citing Hoffmann-La Roche*, 493 U.S. at 173).

1   defenses available to defendant which appear to be individual to each plaintiff; fairness and

2   procedural considerations; and whether plaintiffs made any required filing before instituting

3   suit." *Brown*, 222 F.R.D. at 679, *citing Thiessen*, 267 F.3d at 1103; *Williams*, 222 F.R.D. at 485;

4   *Aguayo*, 2005 U.S. Dist. LEXIS at *6. If the opt-in plaintiffs are determined not to be similarly

5   situated after all discovery has been completed, the Court decertifies the class, and the opt-in

6   plaintiffs' claims are dismissed without prejudice. *See, e.g.*, *Mooney*, 54 F.3d at 1214.

### 3.   Notice is Appropriate Because Plaintiffs are "Similarly Situated" to Other Current and Former BSEs

Plaintiffs have alleged in their complaint, and shown by limited discovery obtained to

date, that the potential collective action members in this case are similarly situated because,

among other things, they share uniform job descriptions and functional job titles and have been

denied overtime pay for all overtime hours they work on the same common basis: Wells Fargo

made a decision to implement a corporate policy that treats all of its BSEs as categorically

"exempt" from the FLSA's overtime pay requirements solely on the basis of their functional job

titles and descriptions. The fact all BSE's were subject to the same policy, alone, supports a

finding of similar situation, a provisional certification of the case as a FLSA collective action and

order and sending notice to all potential plaintiffs. *Thiessen*, 267 F.3d at 1102; *Kane v. Gage*

*Merchandising Servs.*, 138 F. Supp. 2d at 214-15.) (notice stage certification appropriate where

there was initial showing that employer classified group of employees as exempt and did not pay

them overtime); *Aguayo*, 2005 U.S. Dist. LEXIS 22190 at *10; *Brown*, 222 F.R.D. at 679;

*Williams*, 222 F.R.D. at 485; *Reab*, 214 F.R.D. at 628.

Additionally, the group is similarly situated because for all material purposes, all BSEs

have the same core job duties, functions and responsibilities. Wells Fargo is hard-pressed to

contend to the contrary because the company has pled that the exempt/nonexempt status of all

BSEs is properly determined on a categorical basis. *See* Answer to Second Amended Complaint,

Second Defense (common defense that all BSEs are exempt because they fall under the exempt

classifications set forth in the FLSA), Sixth Defense (good faith defense that the company

believed all BSEs to be exempt). Thus, according to all parties, all BSEs are similarly situated

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

1   for the purpose of the factual and legal determinations as to whether Wells Fargo's refusal to pay

2   overtime wages is unlawful.

3        In addition to being treated uniformly by Wells Fargo, all Wells Fargo BSEs perform the

4   same primary job duties: to operate and maintain paper and computer based business systems

5   according to Wells Fargo's procedures for project and change management. BSEs are the "bolt

6   turners" who document any changes to business systems and maintain any existing business

7   systems. They gather information about existing business systems, document the changes or

8   updates to those systems that have been requested by management in templates provided by

9   Wells Fargo, secure approvals for the changes or updates from managers, and maintain existing

10  systems subject to Wells Fargo's policies and procedures. Thus, all BSEs are subject to identical

11  job descriptions and the same corporate-wide policies while performing their similar primary job

12  duties.

13       To satisfy the requirements of *Hoffmann-La Roche*, "[a]ll that need be shown by the

14  plaintiff is that some identifiable factual or legal nexus binds together the various claims of the

15  class members in a way that hearing the claims together promotes judicial efficiency and

16  comports with the broad remedial policies underlying the FLSA." *Ballaris*, 2001 U.S. Dist.

17  LEXIS 13354 at *5 (quoting *Wertheim*, 1993 U.S. Dist. LEXIS 21292 at *2-*3). Here, all BSEs

18  are "similarly situated" within the meaning of the FLSA because the BSEs' job duties, functions

19  and responsibilities are sufficiently identical for purposes of evaluating their status under the

20  FLSA and the merits of Wells Fargo's affirmative defense that they are exempt.

21       **B.    The Statute of Limitations Should Be Equitably Tolled**

22       Under the FLSA, the statute of limitations for each individual party plaintiff is not tolled

23  until he or she files written consent to join the action, or until the court issues an equitable tolling

24  order. 29 U.S.C. § 256(b); *Partlow v. Jewish Orphans' Home of Southern Cal., Inc.*, 645 F.2d

25  757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffmann-La Roche*, 495 U.S. 165;

26  *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 312-13 (S.D. W.Va. 1986). Equitable

27  tolling is appropriate under the FLSA where similarly-situated plaintiffs, through no fault of their

28

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

own, have been unable to opt in to the lawsuit. *See Partlow*, 645 F 2d at 760 (equitable tolling where original consents found invalid based on improper attorney solicitation of the plaintiffs); *Owens*, 630 F. Supp. at 312-13 (equitable tolling where the court did not rule on plaintiff's motion for collective action certification for over a year, during which time other plaintiffs were effectively precluded from filing Consents to Join).

In this case, events beyond plaintiffs' control have prevented many prospective plaintiffs from learning of and timely opting in to this lawsuit. Plaintiffs' counsel requested that Wells Fargo voluntarily produce contact information for potential collective class members, subject to an appropriate confidentiality provision and expressly for the purpose of providing notice to similarly-situated employees of the lawsuit and to give them an opportunity to opt in. *See* Lowe Decl. ¶¶ 3, 6-8. Plaintiffs' counsel also requested this information through formal discovery. *Id* at ¶ 9. To date, Wells Fargo has refused to provide the requested information and plaintiffs have been unable to inform similarly situated employees about this case or their right to opt in. *Id* at ¶¶ 6, 8-10; Exs. 34, 35.

Plaintiffs' counsel also attempted to obtain a tolling agreement from Wells Fargo that would toll the claims of all potential collective action members from the date of the filing of the Complaint, February 9, 2005 forward. Defendants agreed only to an initial tolling agreement that commenced May 19, 2005 and ended September 16, 2005 and that did not revive any claim that was barred by the passage of time as of May 19, 2005. When defense counsel agreed to extend the tolling agreement, they did so only through November 18, 2005, and then contended that the initial tolling agreement did not apply to any e-BSCs or to any BSCs or BSAs employed at Wells Fargo Service Company prior to September 7, 2005. *Id* at ¶¶ 6, 11-12; Exs. 36, 37.

In order to ensure that all potential collective class members are not prejudiced by their lack of knowledge of this lawsuit and thus their inability to file consents to join, plaintiffs request that the court equitably toll the claims of the FLSA collective class members from the date that the Complaint was filed on February 9, 2005 through the Court-set deadline for receipt of Consents to Join.

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

## IV.   **CONCLUSION**

The goal of judicial efficiency weighs heavily in favor of issuance of *Hoffmann-La Roche* notice to potential collective action members here. Notice will permit "efficient resolution in one proceeding" of a discrete range of factual and legal issues applicable to all Wells Fargo BSEs across the country. *See Hoffmann-La Roche,* 493 U.S. at 170. Absent notification, countless individuals will be left to litigate in separate actions the same dispute presented here over the lawfulness of classifying Wells Fargo's BSEs as administrative employees and failing to pay them overtime. *See id.* at 172 (notice prevents "multiplicity of duplicative suits" and can "expedite disposition of the action"). Furthermore, the statute of limitations should be equitably tolled, as to each potential collective action member and each defendant, as of February 9, 2005.

DATED:   11/4/05

RUDY, EXELROD & ZIEFF, LLP

By: _____

PATRICE L. GOLDMAN
Attorneys for Plaintiffs

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800

**ATTORNEYS FOR PLAINTIFFS:**

Todd F. Jackson – CA State Bar No. 202598
Claire Kennedy-Wilkins – CA State Bar No. 231897
LEWIS, FEINBERG, RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: tjackson@lewisfeinberg.com,
    ckwilkins@lewisfeinberg.com

James M. Finberg – CA State Bar No. 114850
Jahan C. Sagafi – CA State Bar No. 224887
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
Email: jfinberg@lchb.com;
    jsagafi@lchb.com

Steven G. Zieff – CA State Bar No. 84222
David A. Lowe - CA State Bar No. 178811
Patrice L. Goldman – CA State Bar No. 142855
Rudy, Exelrod & Zieff, LLP
351 California Street, Suite 700
San Francisco, CA 94104
Telephone:     (415) 434-9800
Facsimile:     (415) 434-0513
Email: sgz@reztlaw.com dal@reztlaw.com,
    plg@reztlaw.com

Robert Ira Spiro – CA State Bar No. 067641
Rebecca Sobie – CA State Bar No. 179562
Spiro Moss Barness Harrison & Barge LLP
11377 W. Olympic Blvd., 5th Floor
Los Angeles, CA 90064-1625
Telephone: (310) 235-2468
Facsimile: (310) 235-245
Email: ispiro@smbhblaw.com;
    rsobie@smbhblaw.com

PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR APPROVAL OF *HOFFMANN-LA ROCHE* NOTICE;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

23

CASE NO. C 05-0585 CW

LAW OFFICES OF
RUDY, EXELROD & ZIEFF, L.L.P.
351 CALIFORNIA STREET, SUITE 700
SAN FRANCISCO, CA 94104
(415) 434-9800