1  NANCY E. PRITIKIN, Bar No. 102392
   R. BRIAN DIXON, Bar No. 076247
2  KRISTA A. STEVENSON, Bar No. 185241
   LITTLER MENDELSON
3  A Professional Corporation
   650 California Street, 20th Floor
4  San Francisco, CA  94108.2693
   Telephone:   415.433.1940
5  Facsimile:   415.399.8490

6  Attorneys for Defendants and
   WELLS FARGO & COMPANY,
7  WELLS FARGO BANK, N.A. and WELLS
   FARGO SERVICES COMPANY and
8  Counterclaimant WELLS FARGO BANK, N.A.

9                    UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                          OAKLAND BRANCH

12

13  JASMIN GERLACH and REGGIE              Case No.  05-CV-00585-CW
    PLACE, on behalf of themselves and all
14  others similarly situated,

15                Plaintiffs,             **REDACTED
                                          DEFENDANTS' MEMORANDUM OF
16       v.                               POINTS AND AUTHORITIES IN
                                          OPPOSITION TO MOTION FOR NOTICE
17  WELLS FARGO & CO., WELLS FARGO         TO ALLEGEDLY SIMILARLY SITUATED
    BANK, N.A., and WELLS FARGO            EMPLOYEES**
18  SERVICES COMPANY,
                                           Date:         January 13, 2006
19                Defendants.              Time:         10:00 A.M.
                                           Courtroom:    2
20                                         Trial Date:   TBA

21

22  WELLS FARGO BANK, N.A.,

23                Counterclaimant,

24       v.

25  JASMIN GERLACH,

26                Counterdefendant.

27

28

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES                    Case No. C 05-0585 CW

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................ 1

  A.   The Parties ............................................................................................ 1

  B.   The Diverse Group At Issue ................................................................. 2

  C.   The Exemptions At Issue ...................................................................... 3

  D.   Extensive Discovery Has Been Conducted By Plaintiffs ..................... 5

  E.   The Standard For Determining Whether Employees Are Similarly Situated.............. 5

II.  NOTICE TO THE DIVERSE GROUP AT ISSUE IS NOT APPROPRIATE ...................... 7

  A.   The BSCs Are Not Similarly Situated .................................................. 7

  B.   Plaintiffs Misrepresent The Diverse Nature Of The Jobs At Issue............................ 15

  C.   The Evidence Does Not Support Conditional Class Certification............................. 21

III. THE PROPOSED NOTICE IS IMPROPER ........................................................... 23

IV.  THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO EQUITABLY TOLL
     THE STATUTE OF LIMITATIONS ................................................................... 24

V.   CONCLUSION.................................................................................................. 25

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT. TO SIMILARLY SITUATED EMPLOYEES**

i.

**Case No. C 05-0585 CW**

# TABLE OF AUTHORITIES

PAGE

## CASES

*Alvarez-Marchain v. United States*,
107 F.3d 696 (9th Cir. 1996) ............................................................... 24

*Bayles v. American Med. Response of Colorado, Inc.*,
950 F. Supp. 1053 (D. Colo. 1996) ............................................. 6, 21, 22

*Brooks v. Bellsouth Telecoms.*,
164 F.R.D. 561 (N.D. Ala. 1995) ......................................................... 5

*Chao v. Virginia Dep't. of Transportation*,
291 F.3d 276 (4th Cir. 2002) ............................................................. 24

*Christenberry v. Rental Tools*,
665 F. Supp. 374 (E.D. La. 1987) ....................................................... 11

*Clausman v. Nortel Networks, Inc.*,
2003 U.S. Dist. LEXIS 11501 (D. Ind. 2003) ................................... 7, 23

*Dean v. Priceline.com, Inc.*,
2001 U.S. Dist. LEXIS 24982 (D. Conn. 2001) ........................ 7, 12, 23

*Dybach v. Florida Dep't. of Corrections*,
942 F. 2d 1562 (11th Cir. 1991) ......................................................... 23

*Gilstrap v. Synalloy Corp.*,
409 F. Supp. 621 (M.D. La. 1976) ...................................................... 11

*Gorman v. Continental Can Co.*,
1986 U.S. Dist. LEXIS 30856 (N.D. Ill. 1986) .................................... 13

*Hashop v. Rockwell Space Operations Co.*,
867 F. Supp. 1287 (S.D. Tex. 1994) .................................................... 14

*Hasken v. City of Louisville*,
234 F. Supp. 2d. 688 (W.D. Ky. 2002) ................................................ 24

*Hoffmann-La Roche, Inc. v. Sperling*,
493 U.S. 165 (1989) ............................................................................ 25

*Horne v. Singer Business Machines, Inc.*,
413 F. Supp. 52 (W.D. Tenn. 1976) ..................................................... 13

*Leuthold*,
224 F.R.D. 462 (D Cal. 2004) .............................................................. 6

*Lusardi*,
118 F.R.D. 351 (D.N.J. 1987) .......................................................... 6, 21

*Mike v. Safeco Ins. Co. of Am.*,
274 F. Supp. 216 (D. Conn. 2003) .................................................. 7, 23

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207 (5th Cir. 1995) ................................................................ 6

*Morisky v. Public Serv. Elec. & Gas Co.*,
111 F. Supp. 2d at 497-98 ................................................ 5, 6, 21, 23

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES

ii.

Case No. C 05-0585 CW

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Nelson v. Ellerbe Becket Construction Services, Inc.*,
 283 F. Supp. 2d 1068 (D. Minn. 2003) ............................................................ 12, 13

*Owens v. Bethlehem Mines Corp.*,
 630 F. Supp. 309 (S.D. W. Va. 1986) .................................................................... 25

*Partlow v. Jewish Orphans' Home of Southern California, Inc.*,
 645 F.2d 757 (9th Cir. 1981) ................................................................................ 25

*Pfohl*, 2004 U.S. Dist. Lexis at *8-9 .............................................. 5, 6, 21, 22, 23, 24

*Ray*,
 1996 WL, at *3-5 ............................................................................................ 5, 21

*Shushan v. Univ. of Colorado*,
 132 F.R.D. 263 (D. Colo. 1990) .............................................................................. 6

*Thiessen v. General Electric Capital Corp.*,
 267 F.3d 1095 (10th Cir. 2001) ........................................................................ 6, 21

*Ulvin v. Northwestern Nat. Life Ins. Co.*,
 141 F.R.D. 130 (D. Minn. 1991)............................................................................ 21

*Vaicaiteiene v. Partners In Care Inc.*,
 2005 U.S. Dist. LEXIS 13490 (S.D.N.Y. 2005) ................................................... 24

**STATUTES**

29 C.F.R. § 541.1 ............................................................................................................ 4

29 C.F.R. § 541.100 .................................................................................................... 3, 4

29 C.F.R. § 541.103 ........................................................................................................ 4

29 C.F.R. § 541.2 ............................................................................................................ 4

29 C.F.R. § 541.200 .................................................................................................... 3, 4

29 C.F.R. § 541.201(b) ................................................................................................... 4

29 C.F.R. § 541.3 ............................................................................................................ 4

29 C.F.R. § 541.301 .................................................................................................... 3, 4

29 C.F.R. § 541.303 ........................................................................................................ 4

29 C.F.R. § 541.400 .................................................................................................... 3, 4

29 C.F.R. § 541.600 ........................................................................................................ 4

29 C.F.R. § 541.601 ........................................................................................................ 4

29 C.F.R. § 541.700 ........................................................................................................ 4

29 C.F.R. § 541.700(a) .................................................................................................... 4

29 C.F.R. § 541.704 ...................................................................................................... 20

29 C.F.R. § 541.708 ........................................................................................................ 4

29 U.S.C. § 213(a)(17)................................................................................................. 3, 4

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.          iii.                Case No. C 05-0585 CW
TO SIMILARLY SITUATED EMPLOYEES

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2
PAGE

3
**OTHER AUTHORITIES**

4
*The Fair Labor Standards Act,*
    E. Kearns, ed., BNA Books 1999, p. 172 ................................................................................. 3

5
Firmwide:80636593.1 021021.1017

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**

iv.

Case No.  C 05-0585 CW

## I.   INTRODUCTION

The Court must reject Plaintiff's unfounded attempt to make a single, conditional class out of 2,619 highly-paid white-collar employees who have widely varying job duties, who work across the entire United States, and who are subject to every possible permutation of the executive, administrative, professional and computer professional exemptions at issue.  The Business Systems Consultants ("BSCs") of Defendant Wells Fargo Bank, N.A. ("WFBNA") are not similarly situated and a conditional class will not promote judicial efficiency. Individual determinations regarding the exemptions which apply to each putative class member's widely varying job duties will be required to adjudicate each individual's exempt status. Plaintiffs have unjustifiably focused on a job description used for compensation purposes, the form (but not the content) of performance reviews, and templates used to facilitate decision making about changes to computer systems in order to create an illusion of uniformity that does not exist.  As set out in the depositions taken by Plaintiffs and in the accompanying declarations,[1] the BSCs have widely varying job duties and are <u>not</u> similarly situated.  Further, the job title is used in the organization as a flexible one, which reflects complex and variable job duties of the individual BSCs, making class treatment impractical and unworkable.

### A.   The Parties.

Plaintiff Gerlach worked as a BSC 2 from March 1, 2000, to June 1, 2001, and as a BSC 3 until October 1, 2004, when her employment was terminated.[2] Ms. Gerlach worked a few months in the Systems Group, and then in Corporate Human Resources, both in Arizona.  Plaintiff Place worked in California as a BSC 3 in the Systems Group from May 1, 2003, until August 16, 2004,

---

[1] Filed herewith are 37 declarations from WFBNA Business Systems Consultants, levels 2 through 6, from varied lines of business, and who work in 11 different cities in 5 different states.  Defendants also submit declarations of Compensation Manager Linda Conley, Enterprise Project Management Group manager James Galbraith, and Defendants' counsel Krista A. Stevenson.  Defendants refer to these declarations herein by the declarant's last name, and declaration paragraph number (e.g., Miele ¶_.)  Relevant excerpts of the deposition testimony from the named Plaintiffs, the nine front-line managers of WFBNA BSCs, and other WFBNA managers are attached to the declaration of Krista A. Stevenson, and are referred to by the deponent's name, and the page and line number of the cited testimony.

[2] Ms. Gerlach admitted in her deposition that she destroyed computers containing information regarding the performance of her job duties. (Gerlach Dep. 152:24-153:9; 174:10-20; 178:1-5; 180:2-6.)  Defendants intend to move for sanctions regarding this admitted spoliation of evidence.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**          1          **Case No. C 05-0585 CW**

1   when he transferred to a Quality Assurance Analyst 4 position.[3]   Plaintiff Place resigned on

2   October 1, 2004, four months before this action was filed.

3       Defendant WFBNA was the employer of the named Plaintiffs and is the sole employer of the

4   diverse group of employees at issue. WFBNA is a subsidiary of Defendant Wells Fargo & Co.

5   ("WFC"). WFC has not employed any Business Systems Consultants since 1999, which is outside

6   the time period at issue in this case. WFC was the corporate parent of Defendant Wells Fargo

7   Services Co. until April 16, 2004, when Wells Fargo Services Co. was merged into WFBNA and

8   became the Wells Fargo Services business line. As a result of the merger, WFBNA is the sole

9   employer at issue in this proceeding.

10       **B.**    **The Diverse Group At Issue.**

11       There are 2,619 BSCs in six levels, in 38 states, in 99 cities and in 12 different lines of

12   business. (Stevenson ¶28.)[4]   The first level, BSC 1, is non-exempt and is paid overtime. BSC levels

13   2 and 3 are overtime exempt, have salaries ███████████████████████. BSC

14   levels 4 through 6 have salaries ranging up to ████████████████. (Stevenson ¶2-3,

15   Exs. 1, 2, *filed under seal,* ¶19, Ex. 18.)   BSC level 6 includes a Corporate Vice President.

16   (Abbate ¶1.)

17       Both within and between the levels, the BSCs' duties vary widely. As set out in greater

18   detail below and in the accompanying declarations, some BSCs supervise other BSCs. Some BSCs

19   are engaged in computer programming, others are project managers, some have substantial

20   responsibility for budgets, some are involved in designing tests of computer systems, some are web

21   masters, some develop and administer policies, some are engaged in regulatory oversight, and many

22   work in widely varying systems analysis roles. The duties of the BSCs' individual positions are

23   largely driven by individual business groups and departments, and are not centrally determined.

24

25   [3] Mr. Place admitted in his deposition that he misrepresented having a college degree in Computer
Science in his job application. (Place Dep. 87:19-89:9). Such misrepresentation prevents an

26   employee from being bonded at Wells Fargo and would have required the termination of his
employment had he not resigned.

27   [4] Plaintiffs seek certification of a group of employees they call Business Systems Employees, a job
classification which does not exist. (Conley Decl. ¶4). Furthermore, there has been no job title in

28   the relevant time period called "Business Systems Analyst." (Conley ¶3.)  A class that does not
correspond with any job classification or defined group of jobs is too uncertain to certify.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**    2    **Case No. C 05-0585 CW**

1

## C.     The Exemptions At Issue.

2        The extraordinarily complicated nature of Plaintiffs' suggested undertaking is a result of the

3   widely varying duties of the BSCs and the innumerable permutations of the four exemptions that

4   apply to the duties of each individual BSC.[5]   (See, Defendants' Answer to Second Amended

5   Complaint, Second Affirmative Defense, Stevenson ¶32, Ex. 30.)

6        The Court must consider the requirements of the executive, administrative, professional and

7   computer professional exemptions when assessing each individual BSCs' duties and overtime

8   exempt status.  An exempt executive employee must be in charge of a recognized subdivision of the

9   business, must manage employees in a particularly described sense, and must customarily and

10  regularly direct the work of two full-time equivalents.     29 C.F.R.  § 541.100.     An exempt

11  administrative employee must perform office or non-manual work directly related to management or

12  general business operations of the employer or the employer's customers and must perform work

13  that requires the exercise of independent judgment and discretion with respect to matters of

14  significance.  29 C.F.R.  § 541.200.  An exempt professional employee must work in a customarily

15  recognized, learned profession that requires knowledge of an advanced type, in a field of science or

16  learning, customarily acquired by a prolonged course of specialized intellectual instruction and

17  study.  29 C.F.R.  § 541.301.  An exempt computer professional must be engaged as a computer

18  systems analyst, computer programmer, software engineer or other similarly skilled worker, and

19  (1) be engaged in the application of systems analysis techniques and procedures, including

20  consulting with users, to determine hardware, software or system functional specifications; (2) the

21  design, development, documentation, analysis, creation, testing or modification of computer systems

22  or programs, including prototypes, based on and related to user or system design specifications;

23  (3) the design, documentation, testing, creation or modification of computer programs related to the

24  design of software or hardware for related to machine operating systems or (4) some combination of

25  the foregoing.  29 U.S.C. § 213(a)(17); 29 C.F.R. § 541.400.  The exemptions themselves sometimes

26

27

28

[5] "In reviewing the various requirements that must be met in order to qualify an employee for exempt status, it is important to realize that the white-collar exemptions are applied on a case-by-case basis.  That fact that one employee in a job classification meets the requirements for the exemption does not necessarily mean that other employees in the same classification are exempt." *The Fair Labor Standards Act*, E. Kearns, ed., BNA Books 1999, p. 172 [footnote omitted].

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES                3                 Case No.  C 05-0585 CW

1    overlap. Programming and systems analysis and some systems administration are covered by the

2    computer professional exemption; exempt administrative work includes computer network, internet

3    and database administration. 29 C.F.R. § 541.201(b).

4         Furthermore, the Court must determine whether exempt work is an employee's primary duty

5    in order to determine if the employee is overtime exempt. 29 C.F.R. § 541.700(a). Ascertaining an

6    employee's primary duty requires an individualized assessment of how much time the employee

7    spends in different duties, the relative importance of the employee's different duties, the employee's

8    relative freedom from supervision, the frequency with which the employee exercises discretionary

9    decision making, and other relevant factors. *Id.*

10        Furthermore, the Court must consider that the exemptions themselves changed on August 23,

11   2004. On that date, the primary duty test – an essential issue in this case – was broadened, the nature

12   of exempt work under the exemptions – also an essential issue in this case - was redefined.[6] After

13   August 23, 2004, employees with annual incomes of more than $100,000 – which includes a number

14   of the proposed class members - are subject to a new and broader test of exempt status. 29 C.F.R.

15   § 541.601.

16        Furthermore, the Court must consider that the duties can be combined such that one

17   employee may have a number of potentially applicable exemptions. 29 C.F.R. § 541.708; *former*

18   29 C.F.R. § 541.600. An individual who has some leadership responsibilities, some systems analysis

19   responsibilities and some managerial responsibilities must be evaluated under all four of the

20   applicable exemptions.

21        Furthermore, the Court must not only consider the duties of each individual BSC in relation

22   to the permutations of the combined and changing exemptions, but must also consider that the duties

23   of many of the *individual* BSCs changed appreciably as they were transferred and promoted through

24   the period of time at issue. (See, e.g., Della Ripa ¶1, 2, 4-18. [Della Ripa started as a BSC 1 in

25   2001, progressed to a BSC 3, and was then promoted to a Technical Project Manager position on

26

27   [6] *Compare,* 29 C.F.R. § 541.100 *with former* 29 C.F.R. § 541.1; 29 C.F.R. § 541.200 *with former*
     29 C.F.R. § 541.2; 29 C.F.R. § 541.301 *with former* 29 C.F.R. § 541.3; 29 C.F.R. § 541.400 *with*

28   *former* 29 C.F.R. § 541.303 *and* 29 U.S.C. § 213(a)(17); *and* 29 C.F.R. § 541.700 *with former*
     29 C.F.R. § 541.103.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES            4            Case No. C 05-0585 CW

1 | July 15, 2005. While he was a BSC, Della Ripa managed internet platform development projects

2 | from inception through roll-out, and had various management duties throughout his employment.])

3 |      Only at the end of this extraordinarily complicated and burdensome process can the Court

4 | determine if any one employee was exempt for any portion of his or her employment and this

5 | determination manifestly cannot be done in whole or in part on a class basis.

6 | **D.     Extensive Discovery Has Been Conducted By Plaintiffs.**

7 |      This motion was delayed specifically for the purpose of allowing Plaintiffs to conduct

8 | extensive discovery in this case and the record must be considered well developed at this juncture.

9 | (Stevenson ¶27, Ex. 28.) Plaintiffs have received over 40,000 pages of documents in response to

10 | 116 requests and Plaintiffs' have deposed 16 witnesses.   (Stevenson ¶28.)   Although Plaintiffs

11 | suggest that they need even more discovery, additional discovery will not change the facts or the

12 | analysis here. Plaintiffs have had ample time to conduct discovery, have moved the hearing date for

13 | this motion specifically in order to conduct more discovery, have made no effort to reschedule this

14 | hearing date in light of the discovery obtained in the interim, and have only belatedly served any

15 | discovery concerning the eBSC position. (Stevenson ¶28.) Because the discovery in this case has

16 | been extensive, the Court should consider the evidence available to Plaintiffs in considering the

17 | conditional class certification motion. See *Pfohl*, 2004 U.S. Dist. Lexis at *8-9; *Morisky v. Public

18 | *Serv. Elec. & Gas Co.*, 111 F. Supp. 2d at 497-98; Ray, 1996 U.S. Dist. LEXIS at *9; *Brooks v.

19 | *Bellsouth Telecoms.*, 164 F.R.D. 561, 568-69 (N.D. Ala. 1995).

20 | **E.     The Standard For Determining Whether Employees Are Similarly Situated.**

21 |      Courts should exercise their discretion to authorize the notices to similarly situated potential

22 | plaintiffs under section 216(b) of the FLSA only in "appropriate cases." *Hoffmann-La-Roche, Inc. v.

23 | *Sperling*, 493 U.S. 165, 169 (1989); Plaintiffs have the burden to establish that the putative class

24 | members are "similarly situated," and thus, entitled to notice of a collective action under the FLSA.

25 | *Pfohl v. Farmers Ins. Group*, 2004 U.S. Dist. LEXIS 6447, *7 (C.D. Cal. Mar. 1, 2004); 29 U.S.C.

26 | § 216(b) (class action maintainable only as to "similarly situated employees"); *D'Anna v. M/A-

27 | *COM, Inc.*, 903 F. Supp. 889 (D. Md. 1995) (plaintiff has the burden of demonstrating that notice is

28 | appropriate.).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**     5     Case No. C 05-0585 CW

1    The FLSA does not define the term "similarly situated" and the Ninth Circuit has not spoken

2  on the issue, *Leuthold v. Destination Am.*, 224 F.R.D. 462, 465, 2004 U.S. Dist. LEXIS 20724 (N.D.

3  Cal. 2004); *see Pfohl*, 2004 U.S. Dist. LEXIS, at \*7-8, but all courts agree that a diverse group of

4  white-collar employees does not comprise an appropriate class.  Courts are divided as to the proper

5  standard for determining whether the members of a proposed FLSA class are "similarly situated."

6  *See generally Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212-1216 (5th Cir. 1995); *Bayles v.*

7  *American Med. Response of Colorado, Inc.*, 950 F. Supp. 1053, 1058-67 (D. Colo. 1996); *Pfohl*,

8  2004 U.S. Dist. LEXIS, at \*8.  While some courts apply an "ad-hoc" two-stage analysis, under

9  which courts direct initial notice to prospective plaintiffs followed by a final evaluation as to

10  whether such plaintiffs are similarly situated, that analysis should not ignore the Rule 23

11  requirements for commonality.  *See, e.g., Shushan v. Univ. of Colorado*, 132 F.R.D. 263, 267 (D.

12  Colo. 1990) (Under 216(b), "the procedures embodied in rule 23 are designed not only to protect the

13  rights of class members, but also to allow effective disposition and management of the litigation,"

14  applying Rule 23 commonality requirements in conditional class proceeding.); *Lusardi*, 118 F.R.D.

15  351, 379 (D.N.J. 1987) (Commonality not met when defenses and the unique circumstances of

16  individual plaintiffs are considered, even where there is a common theory of recovery.)  *See also,*

17  *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001) (*ad hoc*  and Rule 23

18  approaches ultimately use same considerations), *Leuthold*, 224 F.R.D. 462, 467 (D  Cal. 2004)

19  (conditional class motion determined by affidavits submitted by parties; California claims did not

20  warrant certification of opt out class).

21    Where, as here, employees with the same job titles do not perform the same work, they are

22  not similarly situated.  *Morisky, supra*, 111 F. Supp. 2d at 499.  "To determine which employees are

23  entitled to overtime compensation under the FLSA depends on an individual, fact-specific analysis

24  of each employee's job responsibilities under the relevant statutory exemption criteria."  *Id.* at 498-

25  499 (denying conditional class certification of group of employees in white collar technical and

26  design positions); *Pfohl, supra*, at \*20-21 (denying class certification in case involving insurance

27  adjusters where there were distinct defenses available to the defendant regarding each individual's

28  exempt status and thus, did not allow for a manageable case); *Dean v. Priceline.com, Inc.*, 2001 U.S.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.     6
TO SIMILARLY SITUATED EMPLOYEES

Case No.  C 05-0585 CW

1   Dist. LEXIS 24982 (D. Conn. 2001) (conditional class certification of Senior Database

2   Administrators denied where determination of exempt status required an individual and fact

3   intensive analysis); *Clausman v. Nortel Networks, Inc.*, 2003 U.S. Dist. LEXIS 11501 (D. Ind. 2003)

4   (sales position sufficiently varied to require fact intensive inquiry into each individual's employment

5   situation and conditional class certification was denied.); *Mike v. Safeco Ins. Co. of Am.*, 274 F.

6   Supp. 216, 220-221 (D. Conn. 2003) (conditional class certification in case involving insurance

7   adjusters properly denied where central question was whether balance of tasks on a day-to-day basis

8   satisfied the administrative exemption). All of these courts have recognized that a diverse group of

9   white collar employees, such is at issue in the instant case, do not comprise an appropriate group for

10  notice purposes.

11  **II.     NOTICE TO THE DIVERSE GROUP AT ISSUE IS NOT APPROPRIATE**

12          Notice to the diverse group at issue is not appropriate because the BSCs have widely varying

13  duties and the BSCs themselves have confirmed those duties through declarations. Plaintiffs'

14  oversimplification of the BSC job and mischaracterization of the duties of the BSCs cannot stand.

15          **A.     The BSCs Are Not Similarly Situated.**

16          As shown by the declarations filed herewith, it is impossible to generalize the duties of the

17  BSCs, even at the same levels, because of the significant variations from BSC to BSC. Further, the

18  declarations show the individualized analysis that will be required to determine which exemptions

19  apply, and during which time periods.

20          The BSC job is not centrally managed and requires an individualized evaluation. (See

21  Conley Dep. 77:14-18 (including errata); Knapp Dep. 8:3-11; Beasley Dep. 9:17-21; Kruse Dep.

22  8:12-22 [there is no single person who can testify about all of the job duties, training, and

23  supervision of all BSCs].) The functional job title (called a job family) is for the purpose of setting

24  basic pay ranges and contains a very broad overview of the BSC positions. It is undisputed that the

25  functional job title is simply a starting point for the actual job duties of BSCs in the various business

26  groups, and the duties and required experience are based on the actual needs of the business, not

27  based on a strict interpretation of the job descriptions. (Conley Dep. 77:14-18 (including errata),

28  94:11-95:17; Kruse Dep. 64:17-65:8; Fielding Dep. 73:7-22; 86:23-87:9). Because the BSC job

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**        7        **Case No. C 05-0585 CW**

1    varies so widely and is not centrally managed, Defendants provided Plaintiff with nine line managers

2    who could testify at their depositions regarding the job duties of the BSCs in the managers' areas,

3    and regarding the managers' lines of business.   In their motion, Plaintiffs misrepresent these

4    depositions, and wrongly suggest that each manager was testifying generally about the job duties of

5    all BSCs when, in fact, the managers were testifying about the differing job duties of the individual

6    BSCs in each managers' area of responsibility.

7          The executive and administrative exemptions must be assessed with respect to the BSCs who

8    manage other employees.  For example, BSC 2 Dennis Miele in the Home Mortgage group managed

9    data validation projects for the Fidelity Mortgage service system and used his practical and

10    theoretical understanding of the system to perform his duties. (Miele ¶5, 8, 9, 12.)  He supervised

11    between two and six employees, with authority to effectively recommend hiring decisions, and he

12    prepared performance evaluations and assigned work to his reports.  (Miele ¶5- 7.)  Tony Della Ripa,

13    a BSC 3 in the Internet Services/On-line Banking group, leads a team of developers, sets project

14    timelines, and assigns work on projects based on developers' skills.  (Della Ripa ¶6-9, 13.)  Marta

15    Ross, a BSC 3 in Wells Fargo Services Infrastructure Technology and Information Group, is

16    responsible for allocating work on Unix, Linux and Windows-supported servers to engineers.  (Ross

17    ¶1,3-7, 11, 12.)   Amy Fries, a Minneapolis-based BSC 4 in the Corporate Human Resources

18    supervises an applications systems engineer and a BSC. (Fries ¶14, 21, 22.)  Dante Canillas, a BSC

19    4, is a Lead Analyst for Real Systems in the Financial Systems Unit, and he directly supervises three

20    project managers and three developers.  (Canillas ¶1, 2, 6.)  David Lew, a BSC 4 in Private Client

21    Services, manages 33 Business Continuity Plan teams.    He coordinates the work of plan

22    administrators who develop and maintain these plans, facilitates the development of and secures

23    resources for the development of new plans. (Lew ¶4-11; 13, 18.)  Steve Seagle, a BSC 4 in the

24    Operations Technology Department, manages ten Applications Systems Engineers on projects

25    relating to WFBNA's Check Imaging software.  (Seagle ¶1, 4, 5, 6.)  Robert Terry, a BSC 5 in

26    Corporate Trust Services, manages the Business Solutions Group and supervises project managers

27    and team leads. (Terry ¶1, 3, 4, 8.)  Jo-Ann Abbate, a BSC 5 and a Vice President in Private Client

28    Services directly supervises a BSC 1 and a Project Manager 2.  (Abbate ¶1, 4-6, 14.)  Adrian Kanten,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES
8
Case No. C 05-0585 CW

1  a BSC 5 in the Document Custody Department, supervises 9 employees in the Document Custody
2  Systems Support Group. Two BSC 4s and two Applications Systems Engineers report directly to
3  Kanten, and four BSCs and one Application Programmer Analyst report to a BSC 4 who reports to
4  Kanten. (Kanten ¶6, 15, 16.) Christopher Carlson, a BSC 5 for Service Integration in the Post
5  Closing Unit directly supervises seven to 14 BSCs. (Carlson ¶1, 6, 7, 14.) Kelley Graham, a BSC 6
6  in Sacramento, supervises a team of five BSC 4s and 5s in Arizona, California, and Utah. (Graham
7  ¶1, 4-7, 10.) (p. 9) Karen Leum, a BSC 5 in Wells Fargo Services Connectivity Services, directed,
8  prioritized, and evaluated the work of other individuals. (Leum ¶14.) It is noteworthy that the BSCs
9  who manage others manage employees in varying job classifications, who in turn have varying job
10  duties.

11  The BSCs supervisory and managerial responsibilities were confirmed in Plaintiffs'
12  depositions of WFBNA managers. (See Reitz Dep. 48:4-14; 48:19-49:5; 50:22-55:4; 67:2-17;
13  68:12-14; 74:7-25; 134:25-135:22 [Kathryn Parkhurst, who progressed from a BSC 4 to a BSC 6,
14  was a supervisor at each of these levels with authority to hire, discipline, and direct the work of
15  BSCs and Applications Systems Engineers]; Knapp Dep. 217:9-218:9 [BSC 4 leads a team of BSCs
16  who design and create reports with the applicable reporting application, such as compensation
17  analyses, and turnover summaries].)

18  The administrative exemption must be assessed with respect to each BSC who is engaged in
19  strategic research and management recommendation functions. For example, Joan Von Ohlen, a
20  BSC 6, in the Risk and Consumer Access Unit, identifies strategic technological initiatives to
21  improve the experience of retail banking customers. She also identifies and addresses strategic
22  initiatives to reduce risk in the area of internal regulatory compliance. She identifies issues on her
23  own by conducting in-store research, talking to users of the applications, researching the
24  applications, and creates an executive summary of the proposed initiative to obtain sponsorship and
25  funding. (Van Ohlen ¶ 5, 8, 13.) Kandice Ripley, a BSC 4 in the Wholesale Investments & Trust
26  Technology group, tracked finances and managed the budgets of 20 business groups, and acted as a
27  project manager and project manager mentor for projects in the Wholesale Payment & Trust Group
28  and the Cash Vault group. As of September 2005, Ms. Ripley manages a budget of $65 million, and

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES                    9                    Case No. C 05-0585 CW

1  performs ad hoc reporting and financial and strategic information communications. (Ripley ¶1, 9-

2  13.) Other BSCs at all levels perform strategic research functions using their specialized knowledge

3  of their business unit and technological applications and/or systems. (See, e.g., Anderson ¶1, 3-6

4  [BSC 3 Kay Anderson performs research and uses procurement statistics to develop standards for

5  desktops, laptops, printers, and peripheries and to determine what products best meet the business

6  needs of WFBNA]; Bagley ¶1, 4-6 [BSC 4 prepares high level analyses of the technology

7  requirements on projects relating to accounting systems for credit card servicing, and advises

8  marketing department on product development and customer retention projects] Kruse Dep. 147:22-

9  148:16; 149:5-13; 152:8-12 [BSCs in Corporate Trust Services perform strategic business consulting

10  to, among other things, assist in bringing new business by researching and demonstrating uses for

11  available technology]; Kehoss Dep. 94:6-95:20; 116:8-117:4 [BSCs in Business Banking consult on

12  data and data metrics for business bankers to assist them in improving sales performance, and they

13  work on legal compliance issues]; Beasley Dep. 97:7-22 [BSCs in Enterprise Field Operations

14  ("EFO") analyze field equipment and recommend spending opportunities to management]; Beasley

15  Dep. 104:7-24 [Other BSCs in EFO analyze the business operations in conjunction with the

16  requirements of Sarbanes-Oxley, the Gramm-Leach-Bliley Act]; Beasley Dep. 170:2-171:21 [BSCs

17  in EFO use systems applications and field research to analyze whether there are "spend ahead"

18  opportunities to replace or upgrade aging equipment]; Finstad Dep. 68:7-69:13; 69:16-70:2; 73:15-

19  74:22; 134:24-135:6; 143:23-144:8; 145:11-16; 146:4-10 [BSCs research audit regulations, have

20  information security and business continuity functions, and research and prepare reports to the Audit

21  and Examination Committee]. The extent to which these individuals have a broad impact on the

22  organization needs to be assessed individually to determine whether the particular exemption

23  applies.

24        The administrative exemption must also be assessed with respect to each of the BSCs who

25  manages relationships with vendors and with other WFBNA technological support groups, and who

26  negotiates service agreement or who purchases products or services. (Keller ¶20, 21 [BSC 4

27  manages Service Level Agreements for systems made available from the WFS business line];

28  Kanten ¶8, 9. [BSC 5 purchases software services; allocates his team's budget in Kanten's

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**        10        **Case No. C 05-0585 CW**

1    discretion]; Beane ¶8, 10-13 [BSC 3 selects and manages the relationships with vendors and internal

2    engineers]; Bello ¶8, 9 [BSC plans and purchases hardware and software for the group]).   Other

3    BSCs work on their team's budgetary decisions.  (Ballinger ¶15 [BSC 5 involved in preparing the

4    yearly budgets for NBBC projects]); Della Ripa ¶14 [BSC 3 advises management regarding

5    applications, project scheduling, and changes to project scope and/or timelines; plans and purchase];

6    LaCroix ¶12 [BSC 3 performs research on and resolves problem issues based on requests from the

7    business on her business-specific applications]); Beasley Dep. 94:4-14 [BSCs in EFO review and

8    size project requests and prepare and recommend project budgets]; Beasley Dep. 98:24-99:7 [BSCs

9    can make large purchases on behalf of WFBNA in the context of a project]; Canillas ¶10-13

10   [Canillas sizes projects and forecasts project budgets].  The extent to which this is a job function of

11   some BSCs will need to be evaluated individually to determine whether a particular exemption

12   applies.[7]

13          The administrative exemption must be assessed with respect to BSCs who are responsible for

14   marketing programs and related communications. (See Anderson ¶8 [BSC 3 in the WFS EFO

15   Hardware and Lifecycle Management Group, plans an annual "vendor fair," by selecting vendors

16   and hosting and running the event with complete discretion, and prepares procedures or alerts

17   regarding the needs of EFO]; Olson ¶6; Keller ¶4, 16, 17; [BSCs communicate to end users changes

18   to business-specific applications]; Fries ¶10 [BSC 4 prepares written overview of customer

19   problems, projected resolutions, and the business requirements for the solutions]; Graham ¶4, 7

20   [BSC 6 Graham performs public relations and promotions function for the newly-developed

21   Business Direct Division that she heads; she promotes and encourages usages of her group to high-

22   level managers in the Loan Center, Project Management, Process Design and Import, Development,

23   and Risk Management].)

24          The administrative and computer professional exemptions must be separately assessed with

25   respect to each BSC who performs systems analysis, systems administration and computer

---

[7] *Compare, for example Gilstrap v. Synalloy Corp.,* 409 F. Supp. 621, 626 (M.D. La. 1976)
(employee who implemented new system of inventory control and requisitioned stock was exempt)
*with Christenberry v. Rental Tools, 665 F. Supp. 374, 377* (E.D. La. 1987) (purchasing agent who
had no discretion as to which vendors to use was not exempt).

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES                    11                    Case No.  C 05-0585 CW

1    programming functions. For example, BSC 2 Miele, who is also a supervisor, prepared an electronic

2    "dictionary" of data requirements of the systems, using his practical and theoretical knowledge of

3    three separate computer systems to enable front end applications to access data from the Fidelity

4    systems. (Miele ¶13-15.) Darrell Kirk, a BSC 3 in the Workflow Strategic Initiatives group in the

5    Mortgage department, designs and tests models, writes code to solve problems with models, and

6    writes test scripts for the creation of the models and to solve problems that may occur within the

7    models. (Kirk ¶6, 11- 16.) He performs these functions within the Global Event Management

8    system, an Internet application used by over 4,000 customer service representatives in Wells Fargo

9    Home Mortgage.  Sergey Benke, a BSC 3 in the Diversified Products Group, is responsible for a

10   business intelligence application called COGNOS ReportNet, which implements and enforces

11   security plans and corporate standards. Benke builds and configures the COGNOS ReportNet

12   system and applies systems analysis techniques to build and design reports based on user

13   specifications. He received extensive training to obtain his technical and theoretical understanding

14   of the tool he uses. (Benke ¶8, 10-13.) Tim Nelson, a BSC 4 in Business Integration Strategic

15   Management Information Group prepares computer models, uses business matrices, and creates

16   business analytic models to analyze and recommend enhancements or corrections to mortgage data

17   warehouse applications. (Nelson ¶1, 4-6, 8.) Ric Bello is a BSC 5 in the Internet Services Group

18   who oversees and manages the hardware and software infrastructure in ISG using his practical and

19   theoretical understanding of the technology infrastructure in his business unit. (Bello ¶2. 3, 9.)

20   Mr. Kanten, a BSC 5, does programming work, and product testing, for the management and

21   maintenance of millions of documents relating to the over 5000 loan transactions handled in the

22   Mortgage group. (Kanten ¶3, 14.) BSC 4 Sheral Hansen performs business analysis, research, and

23   support regarding WFBNA's payroll systems. (Hansen 416.7.) BSC 5 Dean Lee is responsible for

24   planning design, development and implementation of mortgage products, as well as the support of

25   multiple computer systems used by various business units to acquire, process and service home

26   loans.  (Lee ¶9.) Simon Salazar testified that the five to seven BSCs on the Management and

27   Reporting team of the Retail Banking Incentive Compensation Group build applications to support

28   the incentive compensation plans, write computer programs to run queries and create reports for

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES          12          Case No. C 05-0585 CW

1    those plans, interact with and provide feedback to plan participants, and manage the quarterly payout

2    of the incentive pay to individual bankers. (Salazar Dep. 50:18-51:7; 58:3-60:18.) BSCs design and

3    build spreadsheet applications and database applications that project incentive compensation plan

4    payout information and participation rates. (Salazar Dep. 60:19-61:17.) Some BSCs in Corporate

5    HR Systems are responsible for the functional design and computer programming of data

6    applications using SQR, a programming language used by PeopleSoft. (Knapp Dep. 201:1-16;

7    201:22-202:22.) Because of the different mixes of duties of the BSCs, there is no way to generalize

8    across the potentially applicable exemptions and individualized determinations are necessary.

9        That BSCs are engaged in systems analysis, systems administration and programming duties

10   under the computer professional and administrative exemptions is also reflected in the depositions of

11   the managers. Some of the BSCs lead, prepare requirements for, and solve problems relating to

12   specific computer applications, on behalf of the specific business needs of their business users and

13   customers. (See Finstad Dep. 73:15-74:22; 136:20-137:22; 138:23-139:15; 142:13-21; 143:20-

14   144:8; 153:4-154:4; 154:20-155:11; 156:12-157:15; 158:6-159:11; 161:7-14; 161:15-162:11; 163:8-

15   22; Kruse Dep. 57:24-58:4; 70:4-17; 89:10-17; 153:22-154:6; 87:19-88:10; 89:10-90:3; 90:5-91:11;

16   100:8-101:8; 101:9-18; 101:22-102:7; Kehoss Dep. 50:21-51:4; Rietz Dep. 35:15-21; 35:22-36:25;

17   80:8 18; Knapp Dep. 96:4-25; 101:4-7; 120:18-25; 121:21-23; 138:5-9; 142:22-143:10; 151:6-15;

18   155:8-156:23; Beasley Dep. 34:7-12; 36:5-19; Exhibit 41; Fielding Dep. 98:15-99:10; 101:22;

19   102:10; Paguio Dep. 75:17-76:7.) Each will require an individualized determination as to whether

20   his or her computer-related duties fall into the administrative or computer professional exemptions.[8]

21       Some BSCs must be assessed with respect to the professional exemption. For example,

22   Royce Paulsen, a BSC 5 in Systems Software Support, is a Certified Public Accountant who

23

24   [8] The planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business problems is exempt administrative work.

25   *Former* 29 C.F.R. § 541.205(c)(7). See, *Gorman v. Continental Can Co.*, 1986 U.S. Dist. LEXIS 30856 (N.D. Ill. 1986), and that court's careful and necessary evaluation of the exempt status of *each* of the plaintiffs there in *each* phase of the individual's employment. *Compare, Horne v. Singer*

26   *Business Machines, Inc.*, 413 F. Supp. 52 (W.D. Tenn. 1976) (employee who worked with end users to modify programs was exempt) *and Nelson v. Ellerbe Becket Construction Services, Inc.*, 283 F.

27   Supp. 2d 1068 (D. Minn. 2003) (employer's motion for summary judgment denied where dispute existed as to relative importance of employee's duties, frequency with which discretion was

28   exercised and relative freedom from supervision).

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA  94108 2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES        13        Case No. C 05-0585 CW

1   performs financial and accounting functions for his business group, including preparing and

2   forecasting budgets, and analyzing trends and variances. (Paulsen ¶1, 2, 4, 5, 6.) Paulsen also works

3   with management to obtain funding approval from the business, assists his teams in preparing for

4   financial audits. (Paulsen Dec. ¶9, 10.) These and other BSCs with professional educations and jobs

5   must be evaluated under the overtime exemption for professional employees, in addition to other

6   exemptions that might apply.[9]

7       Even the named Plaintiffs show that the BSCs are not similarly situated and that varying

8   exemptions will need to be analyzed. In her deposition, Ms. Gerlach testified that her job duties

9   primarily revolved around making changes to on-line Human Resources forms. (Gerlach Dep.

10  241:9-22). She was also responsible for preparing business requirements documents. (Gerlach Dep.

11  106:2-9). She testified that she could not compare herself to any other BSC and did not know what

12  other BSCs were doing or what tasks they had been assigned. (Gerlach Dep. 264:1-267:21).

13  Ms. Gerlach led the efforts to move Human Resources forms on-line. (Gerlach Dep. 94:13-22). She

14  testified that her job was "challenging," "not boring," and "varied from day to day." (Gerlach Dep.

15  56:10-23). Ms. Gerlach testified that, during her employment, she had advised management that she

16  was performing the job duties of a higher level BSC, a web developer and a systems quality

17  assurance analyst, during the time she was classified as a BSC 3. (Gerlach Dep. 321:5-322:2; see,

18  also, Gerlach's job performance reviews (Stevenson ¶17, Ex. 16).) The administrative exemption

19  and, possibly, the computer professional exemption will have to be evaluated as to Ms. Gerlach.

20      By contrast, Mr. Place testified that, during his employment, he was responsible for, among

21  other things, preparing functional specifications for projects, including a large project for Interactive

22  Voice Recognition (IVR). (Place Dep. 41:10-42:10). He suggested a new approach to addressing

23  problem specifications. (Place Dep. 42:19-43:8). Mr. Place testified that he had both a theoretical

24  and practical understanding of the computer systems he worked with. (Place Dep. 43:18-44:5). He

25  spent 20% of his time in quality assurance work. (Place Dep. 60:22-61:6.). He worked

26  _____
    [9] Application of the professional exemption requires subtle judgments as to the nature of the job, the
    education required and the employee's judgment and discretion. *See, e.g., Hashop v. Rockwell*
27  *Space Operations Co.*, 867 F. Supp. 1287, 1297 (S.D. Tex. 1994) (non-specific college degree
    combined with one year of formal in-house training was sufficient to meet education requirement,
28  but on-the-job actions did not show requisite judgment and discretion).

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.        14        Case No. C 05-0585 CW
TO SIMILARLY SITUATED EMPLOYEES

1    autonomously. (Place Dep. 67:17-69:7). Mr. Place testified that the job family job description was

2    not helpful in understanding his own job because the particulars were not stated in the description.

3    (Place Dep. 83:23-84:14). Mr. Place was not involved in creating business requirements documents.

4    (Place Dep. 147-2-7). Mr. Place testified that he spent 40% of his time doing something he would

5    consider analysis, which including thinking about the way things should go or what should be

6    followed up on. The analysis expressed itself both in meetings, in writing and in documents. (Place

7    Dep. 149:17-150:7; see, also, Place's job performance review (Stevenson ¶18, Ex. 17.) For

8    Mr. Place, both the computer professional and administrative exemptions will have to be analyzed.

9        The duties of the individual BSCs depend upon their business group's needs and, in many

10   cases, their knowledge and understanding of the particular line of business. (See Kirk ¶8, 9 [Kirk

11   must understand the business to meet the customer requirements and respond to technological

12   needs];  La Croix ¶5- 7 [LaCroix is required to understand the business]; Williams ¶6 [Williams

13   must have a comprehensive functional knowledge of the group's applications]; Keller ¶5-9, 16, 17

14   [Keller is required to understand the Capital Markets business and the systems and applications to

15   perform these functions]; Bello ¶11 [Bello has past experience as a financial consultant, personal

16   banker, and contracts analyst, which are necessary to his BSC job functions.]. BSCs are required to

17   have a solid knowledge of the business in which they work.  (Kruse Dep. 26:2-16; 87:19-88:7;

18   Salazar Dep. 50:18-51:7; 58-60; Kehoss Dep. 81:24-82:7; Reitz Dep. 61:11-21; 62:2-16; Finstad

19   Dep. 164:9-19; Fielding Dep. 183:6-184:24.)  Because the business lines function differently, the

20   knowledge base for the BSCs who work in each business will also vary and require individualized

21   analysis.  The job family descriptions for BSCs clearly do not determine the individual duties that

22   must be assessed to determine whether an individual BSC is overtime exempt.

23           **B.    Plaintiffs Misrepresent The Diverse Nature Of The Jobs At Issue.**

24       Contrary to Plaintiffs' assertions, the evidence does not support the notion that the BSC job

25   duties are standardized.  To the contrary, the evidence shows that, in order to fairly apply the

26   relevant exemptions, separately or in combination, and during time periods before and after

27   August 23, 2004, an individualized assessment and analysis is necessarily required.[10]

28   _____

[10] In an effort to generalize job duties despite the evidence that such generalization is not proper,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108-2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES          15          Case No. C 05-0585 CW

1    Plaintiffs misrepresent the testimony of the witnesses in this case at page 8 of their brief, to

2    assert that all BSCs "provide routine support" of technological tools. The actual testimony cited says

3    nothing of the sort.  (See, e.g., Travis Dep. 101:19-103:4 [witness testifies about job duties of one

4    part-time BSC]; Fielding Dep. 86:8-14 ["Generally" the BSCs do their job duties by interacting with

5    the products of the Automobile Finance Group], 141:14-142:8 [BSCs have a "liaison" function but

6    that "doesn't really describe what the BSC does"]; Gerlach Dep. 63:20-64:22 [Plaintiff's job duties

7    were the same from the time she started as a BSC, but her tasks changed]; Knapp Dep. 154:3-10,

8    154:20-24 [witness describes the steps BSCs take in interviewing people for information on project

9    requirements and filling out statement of work)]; Place Dep. 53:14-54:15 [Place worked with other

10   BSCs in his group who had quality assurance and testing duties], 56:5-9 [other BSCs in Place's

11   group reviewed his project work], 80:1-5 [BSCs within Place's group did project work), 80:10-23

12   (Place worked with BSCs outside of his group but on the same project teams; he shared information

13   with and asked questions of these BSCs and they shared information and asked him questions],

14   140:7-15 [Place could not "speak to" what higher level BSCs were doing].)  Plaintiffs' assertions are

15   not supported by the evidence.

16   Further, the actual testimony of the BSC managers regarding the variety of project

17   management functions[11] is borne out by the declarations of the BSCs.  For example, Julie Beane, a

18   BSC 3, works as a project manager on the information technology transitions attendant to opening,

19   closing, and remodeling WFBNA Banks.  Ms. Beane works with representatives from WFBNA's

20   Plaintiffs misrepresent the testimony of Mr. Paguio, wrongly suggesting that the testimony applies to
     all BSCs.  The actual evidence is that each manager testified that he or she could only speak to the
21   duties of the BSCs he or she directly or indirectly supervised.  (Paguio Dep. 20:22-21:7; Knapp Dep.
     7:11-8:2; Fielding Dep. 28:5-29:7; Beasley Dep. 9:1-16; Reitz Dep. 21:6-14; 24:21-25:10; Kruse
22   Dep. 8:20-9:2; Salazar Dep. 46:23-25; Finstad Dep. 6:23-7:1; Kehoss Dep. 9:6-21.)  There is no
     single person who can testify about all of the job duties, training, and supervision of all BSCs.
23   (Knapp Dep. 8:3-11; Beasley Dep. 9:17-21; Kruse Dep. 7:15-8:7.)
     [11] The BSC manager testimony shows some of the variety of the project management functions of
24   the BSCs.  (See, e.g., Reitz Dep. 35:15-36:25 [BSCs work on projects relating to modified third
     party and internal business applications unique to Corporate Properties]; Knapp Dep. 186:1-19
25   [BSCs in Corporate Human Resources act as project managers and continually modify business
     requirements throughout the projects]; Beasley Dep. 94:4-14 [BSCs review and size projects and
26   develop project budgets without management review.] Kruse Dep. 92:15-93:4 [BSCs must
     understand business requests, engage in deep research and communications with interested parties];
27   Finstad Dep. 161:7-162:11 [BSCs in Audit and Security lead a majority of the internal project efforts
     for the audit services process]; Fielding Dep. 98:15-99:10; 101:22-102:10 [BSCs work on projects
28   relating to modification of vendor software].)

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.       16       Case No.  C 05-0585 CW
TO SIMILARLY SITUATED EMPLOYEES

1    Corporate Properties Group, outside general contractors, and bank managers in order to carry out her

2    responsibilities for voice, data and network technologies. (Beane ¶6, 8, 10- 13.) Tony Della Ripa, a

3    BSC 3 in the Internet Services/On-line Banking group, leads his development team through all

4    phases of a project by setting project timelines, resolving issues, leading project meetings,

5    communicating with systems architects, allocating resources, and assisting  in preparation of

6    business specifications documents. (Della Ripa ¶6, 9, 10, 13, 18.)  Susan Walsh, a BSC 4, is the

7    Product Manager for Investor Reporting Web Services.  She manages the content and functionality

8    of customer websites, and manages four customer service representatives.  Ms. Walsh is part of the

9    senior management group that is responsible for the Structured Products Group strategic vision.

10   (Walsh ¶1, 3-7, 12, 13.)  Diane LaCroix prepares functional specifications for systems development

11   projects and process improvements regarding the web-based account boarding and maintenance

12   systems used in the Merchant Services group called M2 and M2M, and on other systems.  (LaCroix

13   ¶5, 8, 9, 11, 13.)  Michael Nadler, a BSC 5 in Private Client Services, develops and manages projects

14   relating to the implementation of on-line tools using his independent discretion and judgment.

15   (Nadler ¶1,2, 4-12.)  Beth Dayhoff, a BSC 5 in the Pricing Group of Financial Services, analyzes

16   business requirements for projects relating to the applications used by the group, determines staffing

17   levels and time estimates, designs and conducts testing, and is responsible for ensuring that the work

18   is completed.    (Dayhoff ¶1, 4-10.)    Jane Olson, a BSC 3 in the Implementation Consulting

19   Department plans, conducts and directs the analysis of business problems that are solved through the

20   development of the data warehouse and data mart production, through changes in the Strategic

21   Marketing Analysis and Reporting Tools (SMART) analytic platforms.  (Olson ¶1, 4.)  She works

22   with the business user and WFS representatives to define the requirements and plan their

23   development and implementation.  She also consults during the testing and implementation phase.

24   (Olson ¶5.)  Margaret Sakaue, a BSC 3 in the Loan Delivery System the Wholesale Group, prepares

25   business requirements and tests the results for projects related to the AFS or COLT business

26   systems.  She is one of only three or four employees responsible for over 200 business users of these

27   systems.  (Sakaue ¶3-5.)  Shannell Williams, a BSC 2 in the Athena Support Group in the Business

28   Banking Support Unit, provides support to internal commercial banking users who use the Athena

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES          17          Case No.  C 05-0585 CW

1 systems to perform credit requests, and analyze product reports, revenue streams, compensation, and

2 referrals. Ms. Williams analyzes and evaluates end user technical issues and provides assistance to

3 Technical Support Specialists. (Williams ¶1, 4-6, 8, 9, 13.) BSC 5 Shvawn Morgan performs

4 business research within the escrow and insurance departments, and analyzes and creates plans

5 requiring human and technological resources. Ms. Morgan selects team members for various

6 projects, and develops strategies to solve problems that occur in the course of system enhancement

7 and new product addition projects. (Morgan ¶3, 5.) Again, these are not job duties that can be

8 generalized and the exemptions need to be considered in light of the actual job duties of the BSCs.

9     In the same vein, Brandon Wilson, a BSC 4, manages Local Area network migration projects

10 in the Enterprise Field Operations division of WFS. (Wilson ¶3.) Mr. Wilson runs weekly team

11 meetings, assigns work to team members, represents the project team to management and on

12 conference calls with the Deployment Services team, collects data, and works with customers to plan

13 migration projects. (Wilson ¶3-8.) Theresa Adeyemi, a BSC 6, handles projects where there is no

14 particular process in place beforehand, which means she must take into account the associated costs

15 and resources, the complexity, business needs, and ultimate goals when making decisions.

16 Ms. Adeyemi is responsible for analyzing the scope, the resources, the impact on the business and

17 staffing for problem resolution. (Adeyemi ¶1, 4, 5.) BSC 5 Mark Goin handles large, complex

18 projects, which involve incorporating new Enterprise Customer Systems functionality in a manner

19 that meets business, legal and enterprise architectural requirements. He has expertise in a variety of

20 areas of banking and technical systems developed over more than 30 years in the banking industry.

21 (Goin ¶4, 5, 8, 9.) Karen Leum, a BSC 5, makes important decisions that affect not only her

22 division, but also other divisions within the Company. Ms. Leum drafted an entire process

23 identifying relevant parties involved in the project initiation process defining roles and decisions in

24 the process. (Leum ¶7, 12.) BSC 4 Amy Fries analyzes systems and application issues, performs

25 research on behalf of the Corporate Human Resources business line, assigns technical repair tasks to

26 developers and collaborates with developers to resolve technical problems regarding PeopleSoft

27 computer programs, and human resources specific applications of which she is a subject matter

28 expert. (Fries ¶5, 7, 9, 11.) Tom Keller, a BSC 4 in the Capital Markets Group in Wells Fargo

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES
18
Case No. C 05-0585 CW

1  Home Mortgage, develops and analyzes Business Requirements Documents to identify and select
2  technical services, hardware, and software needed for projects to support the Capital Markets
3  function, and monitors projects through their the testing phase and to completion. (Keller ¶4, 8, 11,
4  13-15.) He also works on creating new computer systems to support the Capital Markets group.
5  (Keller ¶5.) Steve Lycke, a BSC 4 in the Software Development Group in the Home and Consumer
6  Finance Group, works as a team leader on projects for the Bonus Commission Accounting section.
7  Lycke maintains and improves the computer systems uses to adjust and approve commissions paid to
8  Mortgage Consultants.   (Lycke ¶4, 5, 11, 12.)   Lycke develops, analyzes and implements
9  requirements specifications, determines the systems changes that must be made, work with
10  developers to implant the specifications, and identify testing scenarios. (Lycke ¶7-10.) Dante
11  Canillas, a BSC 4, leads a project team in the Financial Systems Unit that provides technology
12  support to approximately 12 reconcilement applications, including Recon Plus, Teller Exchange, and
13  Fed Entry, used by business end users in the Financial Systems Unit. (Canillas ¶5.)

14       As further examples of the variation among BSCs in project management, BSC 6 Kelley
15  Graham's job duties, in addition to her management functions, are to review, analyze, and clarify
16  high level requests for new projects in conjunction with the Systems Architectural, Audit, and
17  Project Management Groups, and assign project managers from her team of BSCs. (Graham ¶8.)
18  Graham reviews, analyzes, and defines requests for Maintenance on machine operating systems and
19  assigns requests to BSCs. (Graham ¶9.) (p. 18.) BSC 5 Joanne Abbate performs impact
20  requirements and business requirements for ongoing projects relating to private banking
21  applications. (Abbate ¶3.) BSC 5 Kristin Ballinger makes important technical and staffing decisions
22  on 60 to 70 ongoing projects that originate in her department. (Ballinger ¶4, 8, 9, 12.) Christopher
23  Carlson, a BSC 5, prepares system requirements documents and conducts research to generate new
24  ideas for initiatives to improve his business line's function. (Carlson ¶5, 8-10, 12, 15.)

25       The Court cannot rely on Plaintiffs' unjustifiable assertion that the use of industry-wide best
26  practices for business and technology methodologies by some BSCs means that all BSCs are
27  similarly situated. In fact, the BSCs do not all use the same methodology. BSCs in Corporate
28  Properties, Business Information Management, Automobile Finance Group and Audit and Security,

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES          19          Case No. C 05-0585 CW

do not use any standardized corporate project methodology, but use a project methodology that was developed in, and for, their own group. (Reitz 92:15-93:11, Exh. 50, p. 94; 98:24-99:1; Kehoss 70:9-12; Fielding 64:24-65:11; 65:21-66:1; Finstad 124:14-125:18; Paguio 105:19-106:5.) Some groups track their projects on particular programs like STAMP or CREST, but others do not use it. (Beasley Dep. 96:21-97:6; Paguio Dep. 44:25-45:7; Knapp Dep. 57:23-58:1; Reitz Dep. 77:5-7; Salazar Dep. 106:2-7.) Change management tools, including Pac 2000, used to ensure system stability are used throughout the organization, but only four of the managers deposed testified that their BSCs might use Pac 2000 procedures as part of their job duties.[12] (Paguio Dep. 59:5-17; Knapp Dep. 166:9-11; Beasley Dep. 50:6-10; Rietz Dep. 114:23-116:1.) However, even where BSCs use the same methodologies, the methodologies provide no more than a framework for broad ranging decision-making, and such a framework does not standardize their work or compromise the employees' exempt status. 29 C.F.R. § 541.704[13]. (Galbraith ¶2.) For example, the Enterprise Project Methodology Manual states that it is "a guide, and deals primarily with the 'what' and 'why of project management best practices instead of the 'how.'" (Stevenson ¶20, Ex. 19, p. D026699; see Galbraith ¶2-10.) The Business Requirements Template does not identify the requirements of the business or suggest any solutions; rather it merely prompts the user regarding what types of independent analysis and decisions need to be made in the course of determining the business requirements for a project. (Stevenson ¶21, Ex. 20; See Galbraith ¶2-10.) Indeed, the Template enclosed with Plaintiff's motion includes sections such as, "List requirements that are needed to align with business goals of objectives and any strategic initiatives," followed by empty space for the preparer to devise and complete the requirements. (Stevenson ¶5, Ex. 4, ¶21, Ex. 20.) In order to fairly consider the applicable exemptions, this Court must look at each individual BSC and his or her individual job duties. The record before this Court demonstrates a significant variation among and

---

[12] Moreover, it is clear from the procedures attached to Plaintiff's motion that change control procedures are used to minimize risk and disruption from changes to production systems, but do not dictate job duties, do not mandate the changes to be made to applications, and do not evaluate the business needs leading to the change. (Goldman Ex. 8; Stevenson Ex. 4, Ex. 3, p. D026335, *filed under seal.*)

[13] "The use of manuals, guidelines or other established procedures containing or relating to highly technical . . .or other similarly complex matters that can be understood or interpreted only by those with advanced or specialized knowledge or skills does not preclude exemption under section 13(a)(1) of the Act." §541.704.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

1  within the proposed class, even within the same level and in the same line of business.  Class

2  treatment is improper under these facts.

3       **C.     The Evidence Does Not Support Conditional Class Certification.**

4       Because the Court has substantial information available to it as a result of discovery, the

5  Court should consider whether the BSCs are similarly situated in light of the available evidence.

6  *Bayles*, 950 F. Supp. at 1066; *see also Morisky*, 111 F. Supp. 2d at 497-98 (D. N.J. 2000).

7  Therefore, the Court should consider the following factors in determining whether the BSCs are

8  similarly situated:  (1) the disparate factual and employment settings of the individual plaintiffs;

9  (2) the various defenses available to the defendants with respect to the individual plaintiffs; and

10  (3) fairness and procedural considerations. *Pfohl*, 2004 U.S. Dist. LEXIS 6447 at *8-*9 (citing

11  *Thiessen v GE Capital Corp*, 267 F.3d 1095, 1103 (10th Cir 2001)); *See Lusardi v. Xerox Corp.*, 118

12  F.R.D. 351 (D. N.J. 1987).  The Rule 23 factors of numerosity, commonality, typicality, and fair and

13  adequate representation should also be considered.   As shown herein, the factors compel the

14  conclusion that the BSCs are not similarly situated.

15       The differences in the employment settings of the proposed class make it inappropriate to

16  certify a collective action.  In this case, the BSCs work in widely varying jobs in 38 states, 99 cities,

17  and in multiple lines of businesses.  BSCs and their immediate supervisors and subordinates often

18  work in different geographic locations.  Such disparate circumstances do not support class treatment.

19  *See e.g., Ray*, 1996 WL, at *3-5 (differences in geographical regions and states, properties and

20  amount of overtime hours); *Ulvin v. Northwestern Nat. Life Ins. Co.*, 141 F.R.D. 130, 131 (D. Minn.

21  1991) (differences in age, year of termination, type of termination, division worked, offices,

22  employment status, supervisors and salaries precludes finding that employees are similarly situated);

23  *Lusardi*, 122 F.R.D. 463 at 465 (differences in departments, groups, organizations, units, offices, job

24  location, job actions, supervisors).

25       Exactly those disparate circumstances are at issue for the BSCs at issue.   The different

26  departments within WFBNA have different or no timekeeping processes, hours worked, supervisory

27  oversight, training and supervisor job titles. (Kruse Dep. 161:23-162:2; Knapp Dep. 225:20-23;

28  Beasley Dep. 235:5-236:3; Fielding Dep. 153:18-154:6; Finstad Dep. 173:17-24; Reitz Dep. 77:14-

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**          21          **Case No. C 05-0585 CW**

1    18.) Further, as shown by the declarations, BSCs work varying work weeks, some do not work more

2    than 40 hours per week, others claim to work more. Many BSCs earn high salaries, many between

3    ████████████████████. Other BSCs work for somewhat lower salaries ████████

4    ████████████████. Some BSCs are managers, some are computer programmers, and some

5    are involved in design and testing of computer systems. BSCs are required to be experts in their

6    business lines and on the various computer applications they support. As is demonstrated in section

7    B, above, the actual job duties of BSCs, as evidenced by the testimony of BSCs, including the

8    named Plaintiffs, and the performance evaluations of Plaintiffs, BSCs have vastly different job

9    duties throughout WFBNA. The evidence before the Court resoundingly demonstrates that the

10   BSCs lack any meaningful measure of commonality or of similar employment situations that would

11   permit their status to be adjudicated on anything other than an individualized basis. Furthermore,

12   each of the BSCs who manages other employees will need to have their duties evaluated to

13   determine whether their duties qualify them for the executive and administrative exemptions. See

14   *Pfohl*, 2004 U.S. Dist. LEXIS 6447 (where some insurance adjusters on same project were leads,

15   some were office adjusters, and some were field adjusters, disparate claims of alleged class

16   precluded collective status).

17       When individualized proof will be required at trial, a proposed class is not "similarly situated

18   and a collective action is not appropriate." *See Bayles*, 950 F. Supp at 1067 (denying collective

19   action where individualized proof would be required for "call volume, sleep habits, conditions at

20   particular stations, and treatment under AMR's mealtime policy"). Because the individual duties of

21   each BSC must be evaluated with respect to one or more of the available exemptions, and must be

22   evaluated in many cases under the different tests that applied before and after August 23, 2004, there

23   is no question but that the liability phase will require individualized evidence for the matter to be

24   fairly adjudicated. The evidence does not support any generalized application for evaluating the

25   BSC job classification. Given the highly individualized nature of the BSCs duties, there is also no

26   meaningful subclass that would pass any measure of numerosity.

27       In this case the defenses of the administrative, executive, professional and computer

28   professional exemptions are extremely varied as each element of each exemption must be assessed

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES          22          Case No. C 05-0585 CW

1    with respect to BSC, both before and after the exemptions changed on August 23, 2004. Some BSCs

2    will qualify for more than one exemption. Because of the evidence presented regarding the wide

3    variation among those who hold the BSC position, even at the same level and in the same

4    department, individualized determinations are necessary, making conditional class certification

5    unwarranted. *See, Morisky, supra; Pfohl, supra; Dean, supra; Clausman, supra; and Mike, supra.*

6         Fairness and procedural considerations also dictate that the group at issue not be considered

7    similarly situated. There is an unavoidable conflict between the BSCs who supervise or lead and

8    those who are individual contributors. Individual contributors who wish to establish that they are

9    entitled to overtime will testify that all significant decisions were made by their supervisors or

10   leaders and the supervisors and leaders will have the opposite incentive.

11        The duties of Plaintiffs Gerlach and Place are hardly typical of the duties of the class.

12   Plaintiffs worked only as BSCs 2 and 3 in just three of WFBNA's lines of business. Both had

13   programming and systems analysis oriented jobs which are not representative of the BSCs whose

14   duties were of a supervisory, marketing, of other business nature. Neither functioned on the plane of

15   the BSCs 4, 5 and 6, whose compensation was                    than that of the Plaintiffs.

16        Notice should only be ordered where there is a group of similarly situated employees, whose

17   rights can be adjudicated efficiently in a class action. Those factors are not present here.[14]

18   **III.    THE PROPOSED NOTICE IS IMPROPER.**

19        Any notice should, unlike Plaintiff's proposal, appropriately describe the class and the

20   employer. There is no reason for the class or the notice to include job classifications never held by

21   the named Plaintiffs, in geographic locations never worked in by the named Plaintiffs, with job

22   duties different than the named Plaintiffs. Nor is there any reason for the notice to include entities

23

24   [14] Even if, *arguendo*, Plaintiffs could establish that the proposed class was similarly situated and
     individualized proof was not necessary, the group of employees who wish to participate in this
     action appears to be limited to the two named Plaintiffs. (See Conley Dep. 123:11-124:16 [Conley
25   not aware of any other BSC who complained about overtime or exempt status]; Stevenson ¶ [no
     other FLSA complaints].) This lack of any showing of interest on the part of members of the
26   proposed class, especially where, as here, Plaintiffs' counsel has had a website since the inception of
     the litigation and has published at least one newspaper advertisement, this is an additional ground for
27   denying class certification. (See Stevenson ¶29, Ex. 28; ¶30, Ex. 29.) *See, Dybach v. Florida Dep't.
     of Corrections*, 942 F. 2d 1562, 1567-8 (11th Cir. 1991) (requiring evidence that putative class
28   members desire to opt in).

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.        23                    Case No. C 05-0585 CW
TO SIMILARLY SITUATED EMPLOYEES

1   which never employed the named Plaintiffs or other BSCs. See, Objection to Proposed Notice, filed

2   herewith.

3          The inclusion of different job classifications in different locations is particularly

4   inappropriate given Plaintiffs limited efforts to designate representative plaintiffs. The deadline for

5   Plaintiffs to add new parties was September 16, 2005.  Plaintiffs added one named Plaintiff, Reggie

6   Place and one new Defendant, Wells Fargo Services Co. (even though that entity is now part of

7   WFBNA).  Other entities should be ignored, since none have been named as Defendants.

8          This motion is not an appropriate juncture to obtain a ruling that WFC is a joint employer

9   with WFBNA of the proposed class. Such a determination is an issue for the liability phase of this

10  proceeding and not an issue for class certification. *See, Vaicaiteiene v. Partners In Care Inc.*, 2005

11  U.S. Dist. LEXIS 13490 (S.D.N.Y. 2005) ("Although the relationship between the two Defendant

12  employers and Plaintiff may be relevant to the question of which entity may be ultimately liable for

13  FLSA violations, if any, it is not necessarily relevant to the question of how to define the group of

14  similarly situated potential plaintiffs.")  Furthermore, because there are no BSCs employed by WFC,

15  the named Plaintiffs have no one with whom they can be similarly situated. *See, e.g., Pfohl, supra.*

16  ("Even if Plaintiff were able to establish [joint employer], he has failed to show that he is similarly

17  situated to the other members of the proposed collective group. . .On this basis alone, then, denial of

18  certification of this collective action is warranted.")

19  **IV.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO EQUITABLY TOLL
        THE STATUTE OF LIMITATIONS.**

20         Plaintiffs offer no legally supportable basis for tolling the statute of limitations in this case.

21  "Equitable tolling should be granted only sparingly." *Hasken v. City of Louisville*, 234 F. Supp. 2d.

22  688, 692 (W.D. Ky. 2002).  "Rare and exceptional circumstances" are required to justify equitable

23  tolling.  *Chao v. Virginia Dep't. of Transportation*, 291 F.3d 276, 283 (4th Cir. 2002).  In order to

24  obtain equitable tolling, Plaintiffs must show egregious wrongful conduct on the part of Defendants

25  and extraordinary circumstances beyond Plaintiffs' control. *Alvarez-Marchain v. United States,* 107

26  F.3d 696, 701 (9th Cir. 1996) (equitable tolling allowed where the plaintiff's abduction, torture, and

27  incarceration by the defendant prevented plaintiff from filing his claims).

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFS' MPA IN OPP. TO MOT. FOR NOT.          24          Case No. C 05-0585 CW
TO SIMILARLY SITUATED EMPLOYEES

1    The two cases cited by Plaintiffs are inapposite. In *Partlow v. Jewish Orphans' Home of*

2    *Southern California, Inc.*, 645 F.2d 757 (9th Cir. 1981), *disapproved on other grounds Hoffmann-La*

3    *Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), the plaintiffs' counsel had obtained and served

4    procedurally defective consents from numerous opt-in plaintiffs. The Ninth Circuit held that the

5    district court could briefly toll the statute of limitations to permit the execution of proper consents

6    because the defendant had actual notice of the employees' desire to opt in. In *Owens v. Bethlehem*

7    *Mines Corp.*, 630 F. Supp. 309 (S.D. W. Va. 1986), also cited by Plaintiffs, equitable tolling was

8    ordered with respect to claims arising under the FLSA's enforcement provisions because the court

9    had delayed ruling on Plaintiffs' motion for over a year. The equitable tolling was limited to two

10   plaintiffs, who had already given notice of their claims via an EEOC charge.

11   Plaintiffs have had ample opportunity to communicate with the proposed class through

12   Plaintiffs' web site and newspaper advertisements (Stevenson ¶29, Exh. 28, ¶30, Exh. 29) and, in

13   such a case, equitable tolling should not be granted because of an alleged lack of contact information

14   regarding the BSCs. Plaintiffs have not established an extraordinary circumstance to justify

15   equitable tolling.

16   **V.    CONCLUSION**

17   Plaintiffs have attempted to generalize highly individualized job functions in an effort to

18   present the appearance of a homogeneous group. In fact, the evidence shows that the application of

19   the FLSA to the group of employees at issue will require a highly individualized analysis and

20   evidence, and that conditional class certification should be denied.

21   Dated: December 1, 2005

22

23   _____
     NANCY E. PRYTIKIN
24   LITTLER MENDELSON
     A Professional Corporation
25   Attorneys for Defendants

26   Firmwide:80631472.1 021021.1017

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

**DEFS' MPA IN OPP. TO MOT. FOR NOT.
TO SIMILARLY SITUATED EMPLOYEES**        25        Case No. C 05-0585 CW