NANCY E. PRITIKIN, Bar No. 102392
R. BRIAN DIXON, Bar No. 076247
KRISTA A. STEVENSON, Bar No. 185241
LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940

Attorneys for Defendants
WELLS FARGO & CO., WELLS FARGO BANK, N.A. AND WELLS FARGO SERVICES COMPANY AND COUNTERCLAIMANT WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND BRANCH

| | |
|---|---|
| JASMIN GERLACH and REGGIE PLACE, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO & CO., WELLS FARGO BANK, N.A. and WELLS FARGO SERVICES COMPANY,<br><br>Defendants. | Case No. 05-CV-00585-CW<br><br>**DEFENDANTS' REDACTED OPPOSITION TO PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE**<br><br>**[UNREDACTED VERSION FILED UNDER SEAL PENDING OUTCOME OF ADMINISTRATIVE MOTION TO FILE UNDER SEAL]**<br><br>Date: February 10, 2005<br>Time: 10:00 a.m.<br>Judge: Hon. Claudia Wilken<br>Dept: Courtroom 2, 4th Floor |
| WELLS FARGO BANK, N.A.,<br><br>Counterclaimant,<br><br>v.<br><br>JASMIN GERLACH,<br><br>Counterdefendant. | |

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 5

A. The Q&A Form Is Protected Under The First Amendment. ..... 5

B. Applicable Case Law Does Not Hold—Or Even Suggest—That The Q&A Was Improper. ..... 7

1. The Cases Cited By Plaintiffs Are Inapposite. ..... 7

2. The Sections Of The Q&A Form Selected By Plaintiffs Fail To Demonstrate That The Q&A Form Was Misleading Or Improper. ..... 9

a. The answer to [REDACTED] Is Not Improper Or Misleading ..... 9

b. The Answer To "[REDACTED] Is Not Improper Or Misleading. ..... 10

c. The Answer To The Question [REDACTED] Is Not Misleading Or Improper ..... 10

d. The Answer To The Question [REDACTED] Is Not Misleading Or Improper. ..... 11

e. The Answer To The Question [REDACTED] Is Not Misleading Or Improper. ..... 11

f. The Answers To The Questions Relating to Contact With Plaintiff's Counsel Are Not Misleading Or Improper. ..... 12

g. There Is No Evidence That Any Employee Found The Communication To Be Misleading Or Improper. ..... 13

3. Defense Counsel Did Not Violate The California Rules of Professional Conduct Or The Business And Professions Code. ..... 13

a. Defendants Did Not Violate Rule 3-600. ..... 13

b. Defendants Did Not Violate Business and Professions Code Section 6068(d). ..... 14

C. Plaintiffs' Proposed Remedies Are Improper. ..... 15

IV. CONCLUSION ..... 16

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

# TABLE OF AUTHORITIES

Page

## CASES

Atari, Inc. v. Superior Court
166 Cal.App.3d 867, 871 (1985) .......... 5, 6

Babbitt v. Albertson's Inc.
1993 U.S. Dist. LEXIS 18801 (N.D. Cal. 1993) .......... 5, 15

Belt v. EmCare Inc.
299 F.Supp.2d 664 (E.D. Tex. 2003) .......... 7

Erhardt v. Prudential Group, Inc.
629 F.2d 843, 845 (2nd Cir. 1980) .......... 7

Griggs v. Provident Consumer Discount Co.
459 U.S. 56, 58, 103 S.Ct. 400, 402 (1982) .......... 8

Gulf Oil Co. v. Bernard
452 U.S. 89, 101 (1981) .......... 5, 15, 16

Hampton Hardware, Inc. v. Cotter & Co., Inc.
156 F.R.D. 630, 633 (N.D. Tex. 1994) .......... 15

Kleiner v. First National Bank of Atlanta
751 F.2d 1193, 1202 (11th Cir. 1985) .......... 7

Mevorah v. Wells Fargo Home Mortgage, Inc.
2005 U.S. Dist. LEXIS 28615 (N.D. Cal., November 17, 2005) .......... 8, 13

Organization for a Better Austin v. Keefe
402 U.S. 415, 419 (1971) .......... 6

Parks v. Eastwood Insurance Services, Inc.
235 F. Supp. 2d 1082 (C.D. Cal. 2002) .......... 5, 6, 9, 16

Parris v. Superior Court
109 Cal.App.4th 285, 296 (2003) .......... 6, 12

Pollar v. Judson Steel Corp.
1984 U.S. Dist. LEXIS 19765, *3-4 (N.D. Cal. 1984) .......... 8

Skarbrevik v. Cohen, England & Whitfie
231 Cal.App.3d 692, 704 (1991) .......... 14

Southeastern Promotions, Ltd. v. Conrad
420 U.S. 546, 554 .......... 6

Trulis v. Barton
107 F.3d 685, 694-695 (9th Cir. 1995) .......... 8

Wiginton v. CB Richard Ellis
2003 U.S. DIST LEXIS 16266 (N.D. Ill. 2003) .......... 15

## STATUTES

29 U.S.C. §255(a) .......... 11

Business and Professions Code
Section 17200 .......... 2

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:05-cv-00585-CW Document155 Filed01/20/06 Page4 of 20

## TABLE OF AUTHORITIES
(continued)

Page

Fair Labor Standards Act
Section 216(b) ........ 1

**RULES**

California Rules of Professional Conduct Rule 3-600 (D) ........ 13

California Rules of Professional Conduct
Subsection (E) ........ 13

California Rules of Professional Conduct. Subsection (D) ........ 13

Federal Rule of Procedure
Rule 23 ........ 2

**TREATISES**

Witkin, 1 California Procedure, 4th Ed.,
Attorneys §508 ........ 14\

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' SURREPLY RE PLAINTIFFS' MOTION FOR NOTICE TO ALLEGEDLY SIMILARLY (NO. 05-CV-

iii.

## I. INTRODUCTION

Defendants Wells Fargo Bank, N.A., ("WFBNA") Wells Fargo Services Company, and Wells Fargo & Co. (collectively "Defendants" or "Wells Fargo") submit this Opposition to Plaintiffs' Motion for Corrective Notice. Plaintiffs unjustifiably seek a prohibition on Defendants' communications with its employees. Plaintiffs' Motion is founded on the misapprehension that Wells Fargo needs permission from Plaintiffs' counsel or the Court before communicating with its employees regarding this putative collective/class action. Notwithstanding Plaintiffs' attempt to blur the distinction between pre-certification and post-certification restrictions on communications with class members, Plaintiffs' request for an order forbidding defendants and their attorneys from *pre-certification* communications with the potential[1] class members is an impermissible restraint on constitutionally protected speech.

Similarly, Plaintiffs' further request for a corrective notice and identification of potential class members who received the Question and Answer ("Q&A") document is nothing more than an attempt to circumvent the long established notice and certification procedures of section 216(b) of the Fair Labor Standards Act ("FLSA"). No collective action has been certified. The Court must reject Plaintiffs' argument that the court should, instead, absent any findings of a class, send Plaintiffs' theory of the case in the form of a court ordered "corrective notice" to all putative class members. Plaintiffs proposed communications with the class are so devoid of Wells Fargo's interests that they serve solely to promote plaintiffs interests.

The Q&A document sent to a small subset of BSCs by only 13 managers contradicts the very arguments Plaintiffs' make in their untimely Motion to Strike[2]. In that motion Plaintiffs claim that the Voluntary Interview Notice form lacked the information about the lawsuit that is contained in the Q&A document. The Q&A document is not untruthful, is not misleading and does not discourage employees from opting into or out of the lawsuit.

---

[1] Plaintiffs erroneously refer to "class members" in their brief. No class has been certified, conditionally or otherwise and thus no class members exist. (*See* Plaintiffs' Motion at 2:4, 1:10)

[2] Plaintiffs' Motion to Strike is untimely under Local Rule 7-2 because it was not filed at least 35 days prior to the then scheduled hearing date. Plaintiffs offer no explanation why the Motion to Strike could not have been filed concurrently with the Motion for Corrective Notice.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Defendants were well within their rights in their pre-certification communications with their employees. Plaintiffs' contentions about allegedly improper pre-certification communications must be read in the context of Defendants' First Amendment rights to communicate with its employees. Plaintiffs' request to limit Defendants' access to its own employees while simultaneously demanding access to potential class members before any collective or class action has been certified must be denied.

## II. STATEMENT OF FACTS

Plaintiffs initially pled this case as a collective action for wages under the Fair Labor Standards Act ("FLSA") and as a class action under Federal Rule of Procedure 23 for ERISA claims. On September 7, 2005, Plaintiffs filed a Second Amended Complaint, and added Plaintiff Reggie Place and added California state law wage claims and a claim under California's Unfair Competition Law, Business and Professions Code §17200. No collective or class action has been certified by the court.

In approximately June 2005, faced with an obligation to retain documents for this litigation and the reality that such communications might cause employees to ask line managers about the lawsuit, Defendants instructed its employees to retain documents relating to their work. Declaration of Krista A. Stevenson ("Stevenson Dec.") ¶6. The Q&A document attached to Exhibits A and B of Ms. Goldman's declaration[3] was sent by 13 managers to their Business Systems Consultants ("BSCs") with the document retention instructions. Stevenson Dec. ¶7. The Q&A document was sent to approximately 100 out of approximately 2600 BSCs. Stevenson Dec. ¶8. It is clear from Defendants' production that the Q&A was sent to only a small subset of BSCs. The Q&A comprised approximately 35 pages of the 870 pages of email communications produced to and from managers and BSCs produced to Plaintiffs. Stevenson Dec. ¶8.

[3] Defendants object to the Declaration of Patrice L. Goldman in support of Plaintiffs' Motion for Corrective Notice on the basis of hearsay, speculation, relevance. In reference to the Q&A documents Ms. Goldman states that they "appear to have been sent" (Goldman Dec. ¶ 3), "appear to provide the class and collective action members" (Goldman Dec. ¶4), and "appears to have been widely disseminated" (Goldman Dec. ¶5). Goldman has no personal knowledge of such matters. Her personal opinions as to such matters are irrelevant. She is forming her own opinion based on the text of the documents; her speculations/opinions are irrelevant; the documents speak for themselves. *See* Objections to Declaration of Patrice L. Goldman accompanying Defendants' Opposition.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

The Q&A was a means to prevent line managers from offering extemporaneous, potentially unfounded responses to employee questions. The Q&A addressed such questions such as [redacted] Stevenson Dec. ¶ 6. The Q&A reminded the line managers of their obligation not to retaliate against employees for participation in the lawsuit by [redacted] Stevenson Dec. ¶ 6. The Q&A document is set forth in its entirety here:

[redacted]



LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415.433.1940

Stevenson Dec. ¶ 6

## III. ARGUMENT

### A. The Q&A Form Is Protected Under The First Amendment.

Plaintiffs' Motion omits reference to *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 (1981), the seminal case in class action suits concerning communication among the attorneys and prospective class members. In *Gulf Oil* the Supreme Court emphasized that pre-certification communications to potential class members by both parties are generally permitted, and are also considered constitutionally-protected free speech[4]. *See also Babbitt v. Albertson's Inc.*, 1993 U.S. Dist. LEXIS 18801 (N.D. Cal. 1993), citing *Gulf Oil v. Bernard*, 452 U.S. 89 (1981); *Atari, Inc. v. Superior Court,* 166 Cal.App.3d 867, 871 (1985).

Plaintiffs also fail to mention *Parks v. Eastwood Insurance Services, Inc.*, 235 F. Supp. 2d 1082 (C.D. Cal. 2002), a case following *Gulf Oil* and directly analogous to the situation at hand. There, in a FLSA action, the employer sent an internal memorandum about the case to employees before the employees opted-in to the collective action. The memorandum discussed the case and suggested that employees direct questions to the employer's General Counsel[5]. The *Parks* court held,

> "[I]n a representative action for unpaid wages or overtime under the

[4] The order prohibiting communications stricken by the Supreme Court in *Gulf Oil* stated in part, "In this action, all parties hereto and their counsel are forbidden directly or indirectly, orally or in writing, to communicate concerning such action with any potential or actual class member not a formal party to the action without the consent and approval of the proposed communication and proposed addresses by order of this Court." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 95. Plaintiffs' request here is even more restrictive than the order struck down in *Gulf Oil*. Plaintiffs seek "an order forbidding defendants and their attorneys from communicating with the class members (potential and actual members) concerning this action and the issues in it;" (Plaintiffs' Motion 1:10)

[5] The memorandum sent to employees in the *Parks* case was referenced by the Court as an appendix to the opinion. No appendix appears in the Federal Supplement casebook or in the Lexis version of the case. It can be found on the USDC Central District's PACER/ECF website. A copy of the memorandum from the Court's website is attached is attached as Exhibit C to the Stevenson Declaration.

> Fair Labor Standards Act, 29 U.S.C. §216(b), a defendant employer may communicate with prospective plaintiff employees who have not yet 'opted in,' unless the communication undermines or contradicts the Court's own notice to prospective plaintiffs."

In this case, as in *Parks,* the memo to the employees was permissible because the employees were not yet represented[6], communication with employees was constitutionally-protected, did not undermine or contradict notice issued by the court, and did not state legal advice.

Contrary to Plaintiffs' reference to "class members" (Plaintiffs' Motion at 2:4, 1:10), this Court has not certified a "class" and Defendants have no obligation to obtain Plaintiffs' approval before communicating with its employees. Specifically, "pre-certification communication from the defense to prospective plaintiffs is generally permitted" because "no attorney-client relationship yet exists". *Parks, supra,* 235 F. Supp. 2d at 1084. Plaintiffs presumably expected Defendants to either seek approval from Plaintiffs' counsel or the Court before communicating with supervisors and employees regarding this case. Such expectation is impermissible under the law. *See Parris v. Superior Court,* 109 Cal.App.4th 285, 296 (2003), quoting *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 554 and *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419 (1971) ("prior restraints have long been held presumptively unconstitutional" and "[t]he party seeking to enjoin speech 'thus carries a heavy burden of showing justification for the imposition of such a restraint"). Furthermore, placing such burdens on defendants, while not placing such limitations on plaintiffs, would be inherently unfair. *See Atari, Inc. v. Superior Court,* 166 Cal.App.3d 867, 871 (1985) ("it would be unfair to give [plaintiffs] free rein while limiting [defendant's] access to the same individuals...both sides should be permitted to investigate the case fully"). Thus, Plaintiffs' argument is wholly unsupported by relevant case law and should be rejected.

---

[6] The restrictions on communications by a defendant with class action plaintiffs arise from the existence of an attorney client relationship. *Parks,* 235 F. Supp. 2d at 1083. Under section §216(b) and Rule 23 Defendants' employees are not represented by counsel. "Until they 'opt-in,' prospective §216(b) plaintiffs are not yet parties to the action, they have no attorney, and no attorney-client relation is yet in issue....For purposes of defense communication with §216(b) plaintiffs, the situation is analogous to a pre-certification Rule 23 class action, when the prospective plaintiffs are still unrepresented parties." *Parks,* 235 F. Supp. 2d at 1083.

### B. Applicable Case Law Does Not Hold—Or Even Suggest—That The Q&A Was Improper.

#### 1. The Cases Cited By Plaintiffs Are Inapposite.

That Plaintiffs are unable to point to anything approaching "misconduct" for purposes of this Motion is underscored by the very cases they cite. The decisions relied on by Plaintiffs involved blatant acts or statements or both that sought to affect class members' decisions to participate in the litigation or to undermine class plaintiffs' cooperation or confidence in class counsel after certification or notice had been sent. For instance, in *Erhardt v. Prudential Group, Inc.*, 629 F.2d 843, 845 (2nd Cir. 1980), *after* a Rule 23 class had been certified, the defendant's president and chief executive officer sent a letter to class members warning them that a successful defense of the non-employment class action might make them liable for costs and urged them to disassociate themselves from the lawsuit. Here, the Q&A does not threaten employees that they will be liable for costs if the lawsuit continues, and does not urge employees to disassociate from the lawsuit. *Id.* On the contrary, [REDACTED] Stevenson Dec. ¶ 6. [REDACTED] Stevenson Dec. ¶ 6. This, in no way, urges employees to disassociate from the lawsuit.

Plaintiffs' also rely on *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193, 1202 (11th Cir. 1985), another non-employment class action. There the defendant bank, after two years of discovery and *after* the action had been certified, actively solicited class members to opt out. To do so, it recruited 175 sales representatives to engage in a covert telephone campaign that was so partial that they were told to "do the best job selling that they had ever done." *Id.* at 1198. Further, the defendant in *Kleiner* fired one of its salespeople when he refused to participate in the campaign. *Id.* at n.9. Here, by contrast, Defendants distributed the Q&A that does not encourage opting out but, instead, [REDACTED] Stevenson Dec. ¶ 6.

Case4:05-cv-00585-CW Document155 Filed01/20/06 Page12 of 20

In *Belt v. EmCare Inc.*, 299 F.Supp.2d 664 (E.D. Tex. 2003), another post-certification case cited by plaintiffs, the communication attacked absent class members' status as professionals in the workforce, mischaracterized damages available by ignoring statutory liquidated damages, falsely represented that attorneys' fees would be deducted from any recovery, preyed upon fears and concerns held in the medical community about medical malpractice lawsuits (although the suit had nothing to do with medical malpractice), and suggested that the action could affect class members' employment. *Id.* at 668. Moreover, the communication was sent just days before the court-approved notice was to be distributed, demonstrating an intent to undermine the court-approved notice. *Id.* at 666. Here, the Q&A does not attack the professional status of employees as professionals, prey upon deeply-rooted fears, or threaten employment. Here, the Q&A expressly informs employees that their employment will not be jeopardized as a result of joining the lawsuit, where it reads that [REDACTED] Stevenson Dec. ¶6.

Moreover, Plaintiff cannot rely on the order of the Court in *Mevorah v. Wells Fargo Home Mortgage, Inc.*, 2005 U.S. Dist. LEXIS 28615 (N.D. Cal., November 17, 2005) as a notice of appeal was filed on December 14, 2005. Once the notice of appeal was filed, jurisdiction over the matters appealed in *Mevorah* were transferred to the court of appeals. *Trulis v. Barton*, 107 F.3d 685, 694-695 (9th Cir. 1995) citing *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402 (1982) ("The pendency of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").[7] Finally, in *Pollar v. Judson Steel Corp.*, 1984 U.S. Dist. LEXIS 19765, *3-4 (N.D. Cal. 1984), the court granted a temporary restraining order against the defendant because it was running advertisements in newspapers offering to settle claims directly with members of the putative class, without disclosing the existence of the class action lawsuit. *Id.* at *1. Here, obviously, the Q&A discloses the existence of the lawsuit: [REDACTED]

[7] Furthermore, assuming that *Mevorah* could be considered on the issues raised in Plaintiffs' Motion for Corrective Notice, *Mevorah* is factually distinguishable as that case involved requests for declarations rather than mere communication or dissemination of information. 2005 U.S. Dist. Lexis 28615 at *16 n.3.

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE

8

Case No. 05-CV-00585-CW

[redacted] Stevenson Dec. ¶ 6. The court also viewed the defendant's advertisement as an attempt to solicit information from "class members who are represented by counsel." *Id.* at *1. There are no class members here. In making its order, the Court in *Pollar* stated that it was relying in part on Local Rule 110-3. *Id.* at *1. Local Rule 110-3 no longer exists, and the Northern District of California does not appear to have any rules limiting pre-certification communications.

As discussed above, Defendants have not threatened their employees, attempted to settle individually, obtain releases, or otherwise have them surrender any rights they might have. Defendants have not made any solicitations to employees to opt-in or opt-out. Indeed, unlike the defendants in the cases cited by Plaintiffs, it has committed no misconduct. Thus, Plaintiffs' authority completely fails to support their positions and, on the contrary, demonstrates that Defendants' Q&A was a permissive exercise of free speech.

**2. The Sections Of The Q&A Form Selected By Plaintiffs Fail To Demonstrate That The Q&A Form Was Misleading Or Improper.**

Plaintiffs allege that certain sections of the Q&A were somehow improper or misleading. However, review of the language highlighted by Plaintiffs—presumably the language most offensive to them—reveal that the Q&A is not misleading or improper. Indeed, for the most part, Plaintiffs concede that the answers provide in the Q&A were truthful.

**a. The answer to [redacted] Is Not Improper Or Misleading.**

Plaintiff points out that one section of the Q&A states, [redacted] Stevenson Dec. ¶ 6. There is absolutely nothing improper about referring employees to a manager or HR representative with questions, particularly before class certification when potential class members are unrepresented by counsel. Plaintiffs' argument was soundly rejected in *Parks v. Eastwood Ins. Services, Inc.*, 235 F.Supp.2d at 1085, where a memorandum distributed by an employer to potential class member employees that they could direct questions to defendants' General Counsel. There, the court concluded that "[d]efendant's suggestion to direct

questions to its General Counsel is permissible at this pre-'opt in' stage." *Id.* Accordingly, this section of the communication decidedly is not misleading or improper.

**b. The Answer To [redacted] Is Not Improper Or Misleading.**

Plaintiffs next attack the section of the Q&A that reads:

[redacted]

Stevenson Dec. ¶ 6. Plaintiffs, apparently offended at the suggestion that potential class members could throw materials in the trash, actually concedes that this section of the Q&A is true. *See* Plaintiffs' Motion 9:7. This section actually highlights the Q&A's fair and truthful approach, in that this is the section (in addition to other sections) emphasizes each employee's right to make his or her own decision and, importantly, that Defendants will not retaliate against an employee for communicating with Plaintiffs' attorneys.

**c. The Answer To The Question [redacted] Is Not Misleading Or Improper.**

Plaintiff highlights the portion of the Q&A that reads: [redacted] Stevenson Dec. ¶ 6. Plaintiffs again concede that this statement is true. *See* Plaintiffs' Motion 9:20-21.

Plaintiff's argument that the answer is misleading is unfounded. Plaintiff's allegation that the Q&A should have told employees that they [redacted] is mystifying, because the Q&A actually does that. The response that [redacted] communicates that employees have a right not to relay information to Defendants. Defendants were under no obligation to explain the attorney-client privilege in the Q&A, particularly because employees were not and are not represented by counsel. Moreover, the

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433 1940

statement that [redacted] is accurate, in that Defendants cannot and will not retaliate against employees for communicating with Plaintiffs' attorneys.

**d. The Answer To The Question [redacted] Is Not Misleading Or Improper.**

Plaintiffs next point to the section reads, [redacted] Stevenson Dec. ¶ 6.

Plaintiff alleges that this answer is false; however; this answer is absolutely true. Defendants indeed believes that employees are paid the right way and that no wages are owed. Plaintiff has no evidence to the contrary. The wording of this answer makes clear that Defendants do not think that Plaintiffs have much prospect of winning. It simply states what Defendants believe and not, for example, what Plaintiff believes. Accordingly, there is nothing misleading or improper about this answer.

**e. The Answer To The Question [redacted] Is Not Misleading Or Improper.**

Plaintiffs challenge the section of the Q&A that reads:

[redacted]

Stevenson Dec. ¶ 6.

Plaintiffs did not add state law wage claims or claims under California's Unfair Competition Law until they filed their Second Amended Complaint on August 29, 2005. At the time the Q&A was sent, Plaintiffs' claims were limited to FLSA and ERISA claims. The FLSA provides for a two year statute of limitations. 29 U.S.C. §255(a). Plaintiffs' claims for increased pension contributions are referenced in the answer to the prior question, which reads "[redacted]

Moreover, Wells Fargo was within its First Amendment right to say that it doesn't believe that any violation of the law was willful. Even if the reference to "two years" could be

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:05-cv-00585-CW Document155 Filed01/20/06 Page16 of 20

construed as a misstatement of Plaintiff's claims, this is insufficient to render the Q&A impermissible. "Broad-based assertions that a proposed informational notice is 'unfair," contains some inaccurate statements, or is presented in a misleading form are simply insufficient bases for the imposition of judicial limitations on protected speech in the form of a prior restraint." *Parris v. Superior Court,* 109 Cal.App.4th 285 (2003).

**f. The Answers To The Questions Relating to Contact With Plaintiff's Counsel Are Not Misleading Or Improper.**

Plaintiffs also attack the sections of the Q&A that reads:

Stevenson Dec. ¶6. Plaintiffs allege, basically, that these answers attempt to bias the communication process in favor of Defendants. Plaintiffs' characterization of these answers is inaccurate. First, [redacted] does not bias the communication process in favor of Defendants. An employee interested in joining the lawsuit may very well want to speak with Plaintiff's counsel. Thus, this answer encourages, rather than discourages, employees to speak with Plaintiffs' counsel if they wish to do so. Certainly, Plaintiffs would want an employee supportive of the lawsuit to know whether he or she was speaking with Defendants' counsel or Plaintiffs' counsel.

Second, Plaintiffs concede that line managers do not know Plaintiffs' counsel and cannot advise as to whether they are trustworthy or not. Thus, Plaintiffs admit that the answer to this question is <u>true</u>. This answer educates line managers to provide a neutral response to a question that they might very well have received from employees, and this answer neither promotes nor demotes the reputation of Plaintiffs' counsel.

Third, Plaintiffs' attack on the answer that [redacted] is groundless. Plaintiffs suggest that this answer

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108 2693
415 433 1940

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE

12

Case No. 05-CV-00585-CW

communicates that Plaintiffs' attorneys are not trustworthy. This answer does not communicate that Plaintiffs' attorneys are untrustworthy and, indeed, does not reference Plaintiffs' attorneys at all. Read as a whole, Plaintiffs proposed "corrective notice" is so devoid of Defendants' interests that it becomes a platform to promote plaintiffs' interests. That is not what the law provides. "[C]ourts must be scrupulous with respect judicial neutrality" in overseeing the notice-giving process. *Hoffmann-LaRoche v. Sperling,* 493 U.S. 165, 174.

**g. There Is No Evidence That Any Employee Found The Communication To Be Misleading Or Improper.**

Notably, Plaintiff presents no evidence that anyone actually found the communication to be misleading or improper. In contrast, the *Mevorah* case arose in the context of a complaint from an employee alleging that the communication from Defendants' counsel was coercive and misleading. There is no such complaint here. Despite ample opportunity to do so, Plaintiffs have failed to depose any of the employees to determine whether counsel's communications with the employees was misleading or coercive, what counsel told the employees, and what the employees understood about the lawsuit as a result of the Q&A.

**3. Defense Counsel Did Not Violate The California Rules of Professional Conduct Or The Business And Professions Code.**

**a. Defendants Did Not Violate Rule 3-600.**

Although Defendants' conduct in distributing the Q&A was entirely consistent with relevant case law, Plaintiff erroneously asserts that the conduct of Defendants' counsel violated the California Rules of Professional Conduct. Subsections (D) and (E) of the Rules of Professional Conduct Rule 3-600 (D) state:

> (D) In dealing with an organization's directors, officers, employees, members, shareholders, or other constituents, a member shall explain the identity of the client for whom the member acts, whenever it is or becomes apparent that the organization's interests are or may become adverse to those of the constituent(s) with whom the member is dealing. The member shall not mislead such a constituent into believing that the constituent may communicate confidential information to the member in a way that will not be used in the organization's interest if that is or becomes adverse to the constituent.

> (E) A member representing an organization may also represent any of

Case4:05-cv-00585-CW Document155 Filed01/20/06 Page18 of 20

> its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of rule 3-310. If the organization's consent to the dual representation is required by rule 3-310, the consent shall be given by an appropriate constituent of the organization other than the individual or constituent who is to be represented, or by the shareholder(s) or organization members.

Both case law and treatises are in accord that Rule 3-600 requires only that an attorney representing a corporation (1) tell the constituent that he or she represents the corporation, and (2) not mislead the constituent to believe what he or she tells the attorney will be kept confidential and not be used on behalf of the corporation. See, e.g., *Skarbrevik v. Cohen, England & Whitfiel,* 231 Cal.App.3d 692, 704 (1991); Witkin, 1 California Procedure, 4th Ed., Attorneys §508.

Defendants' Q&A conforms with these requirements. The Q&A clearly communicates that it was issued on behalf of Defendants. The Q&A was frequently accompanied by [redacted]. Stevenson Dec. ¶ 7. Indeed, one cover email (D056884) [redacted] Stevenson Dec. ¶ 6. The Q&A does not give the impression that the attorney represents the employee or that the Q&A was issued on behalf of Plaintiff.

Thus, there was no misconduct pursuant to Rule 3-600 that should preclude this Court from following the accepted practice that parties are permitted to provide answers to questions raised by unrepresented potential class members.

**b. Defendants Did Not Violate Business and Professions Code Section 6068(d).**

Business and Professions Code section 6068(d) provides:

> It is the duty of an attorney to . . . employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.

Bus. & Prof. § 6068(d).

Here, as explained above, the Q&A is consistent with the truth. Plaintiff goes so far to admits that many of the answers stated in the Q&A are truthful, and fails to rebut that the remaining answers are false. Accordingly, Plaintiff's argument fails.

LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108.2693
415 433.1940

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE

14

Case No. 05-CV-00585-CW

### C. Plaintiffs' Proposed Remedies Are Improper.

Plaintiffs' requests for a blanket order prohibiting Defendants from communicating with their employees, a "corrective notice" and identification of recipients of the Q&A document are overly broad and inconsistent with relevant caselaw[8]. The Supreme Court recognized the caution a court must exercise in limiting communications between parties and potential class members. Such an order "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil v. Bernard*, *supra,* 452 U.S. at 101. Moreover, an order limiting communications regarding ongoing communications between a class and class opponents will pass muster only if it is grounded in good cause and issued with a heightened sensitivity for First Amendment concerns. In ascertaining the existence of good cause, four criteria are determinative: (1) severity and likelihood of the perceived harm, (2) precision with which the order is drawn, (3) availability of a less onerous alternative, (4) the duration of the order. *Hampton Hardware, Inc. v. Cotter & Co., Inc.*, 156 F.R.D. 630, 633 (N.D. Tex. 1994). Plaintiffs' have shown neither severe or likely harm to the potential class, have requested an overly broad remedy on the cusp of the Court's ruling on Plaintiffs' *Hoffmann-LaRoche* motion. Plaintiffs' meet none of the *Hampton Hardware* criteria. Other cases have reached the same conclusion, refusing to bar communications pre-certification, in the absence of proven abuse. *See, e.g., Wiginton v. CB Richard Ellis*, 2003 U.S. DIST LEXIS 16266 (N.D. Ill. 2003) (in sexual harassment case plaintiff's motion to prohibit communications by defendant to putative class members by e-mail, press release, or otherwise, except to investigate complaints of harassment, denied, as was plaintiff's motion to compel defendant to participate in scientific survey); *Babbitt v. Albertson's Inc.*, 1993 U.S. DIST. LEXIS 18801 (N.D. Cal. 1993) (plaintiff's motion to prohibit interviews by defense counsel of putative class members in gender discrimination case denied; a communication ban would make it impossible for the employer to defend itself).

On balance, the Q&A was a fair communication directed to a limited number of

[8] Defendants objections to Plaintiffs' proposed "Corrective Notice" are part of Defendants' objections to the Declaration of Patrice L. Goldman in Support of Plaintiffs' Motion for Corrective Notice.

Case4:05-cv-00585-CW Document155 Filed01/20/06 Page20 of 20

potential class members. The Q&A is an appropriate counterweight to the website of Plaintiffs' counsel advertising the lawsuit. If any correction has to be made, it should only made with respect to specific questions and only those individuals who received the communication.

## IV. CONCLUSION

It would be unfair and inappropriate under the reasoning of *Gulf Oil* and *Parks* to prohibit Defendants' communications with its employees who are potential class members. Defendants' Q&A document is not improper. There is no suggestion of retaliation if an employee opts-in. There is no actual or potential abuse or misconduct as a result of the communication. Accordingly, Plaintiffs' Motion For Corrective Notice should be denied in its entirety.

Dated: January 20, 2006

KRISTA A. STEVENSON
NANCY E. PRITIKIN
LITTLER MENDELSON
A Professional Corporation
Attorneys for Defendants
WELLS FARGO & CO., WELLS FARGO BANK, N.A. AND WELLS FARGO SERVICES COMPANY AND COUNTERCLAIMANT WELLS FARGO BANK, N.A.

Firmwide:80725269.1 021021.1017

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE

16

Case No. 05-CV-00585-CW