United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASMIN GERLACH and REGGIE PLACE, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>WELLS FARGO & CO.; WELLS FARGO BANK, N.A.; and WELLS FARGO SERVICES COMPANY,<br><br>    Defendants.<br>_____/<br><br>WELLS FARGO BANK, N.A.,<br><br>    Counterclaimant,<br><br>  v.<br><br>JASMIN GERLACH,<br><br>    Counterdefendant.<br>_____/ | No. C 05-0585 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR APPROVAL OF <u>HOFFMAN-LA ROCHE</u> NOTICE AND DENYING PLAINTIFFS' MOTION FOR CORRECTIVE NOTICE |

Plaintiffs move the Court to certify conditionally this action as a representative collective action and to authorize and facilitate notice of this action to prospective collective action members. Defendants oppose this motion and object to the notice

and opt-in form that Plaintiffs have prepared.  In a separate motion, Plaintiffs move the Court to order Defendants to issue a corrective written notice to all potential collective action members concerning Defendants' allegedly misleading and coercive communications to them and to prohibit Defendants and their counsel from communicating with them concerning this action.  Defendants also oppose that motion.

The matters were heard on February 10, 2006.  Having considered all of the papers filed by the parties and oral argument on the motions, the Court grants in part Plaintiffs' motion for approval of a Hoffman-LaRoche notice and denies it in part, and denies Plaintiffs' motion for a corrective notice.

## BACKGROUND

Plaintiffs contend that they are owed overtime pay under the Fair Labor Standards Act (FLSA).  The FLSA authorizes workers to sue for unpaid overtime wages on their own behalf and on behalf of "other employees similarly situated."  29 U.S.C. § 216(b). Plaintiffs bring this action on behalf of themselves and other similarly situated employees.[1]  Unlike class actions brought under Federal Rule of Procedure 23, however, collective actions brought under the FLSA require that each individual member "opt in" by filing a written consent.  See 29 U.S.C.A. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

---

[1] In addition, Plaintiffs bring State wage law and ERISA claims.

2

In <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165 (1989), the Supreme Court held that, "in appropriate cases," district courts should exercise their discretion to authorize and facilitate notice of a collective action to similarly situated potential plaintiffs.[2]  Plaintiffs contend that this is an appropriate case. They request leave to send a <u>Hoffman-La Roche</u> notice to similarly situated Business Systems Employees (BSEs)[3] who are, or have been, employed throughout the country by Defendants Well Fargo & Co., Wells Fargo Bank, N.A., Wells Fargo Services Company, and any other subsidiaries of Wells Fargo & Co., at any time since February 9, 2002.  According to Plaintiffs, this notice will alert potentially aggrieved individuals that, if they want to pursue a similar claim in this pending lawsuit, they must opt in, and will further the broad remedial goals of the FLSA.

DISCUSSION

I.   <u>Hoffmann-La Roche</u> Notice

As noted above, the FLSA provides for a collective action where the complaining employees are "similarly situated."  29

---

[2] As Plaintiffs note, although <u>Hoffmann-La Roche</u> involved claims brought under the Age Discrimination in Employment Act (ADEA), because ADEA incorporates § 16(b) of the Fair Labor Standards Act into its enforcement scheme, the same rules govern judicial management of collective actions under both statutes. <u>See, e.g.</u>, <u>Shaffer v. Farm Fresh, Inc.</u>, 966 F.2d 142, 147 (4th Cir. 1992).

[3] Plaintiffs define BSEs to include Business Systems Consultants levels 2 through 6; e-Business Systems Consultants levels 2 through 6 and Business Systems Analysts.  According to Defendants, there has been no job title in the relevant time period called Business Systems Analysts.  Defendants also note that BSE is a job classification invented by Plaintiffs, which does not exist.

U.S.C. § 216(b).  But the FLSA does not define "similarly situated," nor has the Ninth Circuit defined it.  As noted by the Tenth Circuit, there is little circuit law defining "similarly situated."  Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001).

Although various approaches have been taken to determine whether plaintiffs are "similarly situated," district courts in this circuit have used the ad hoc, two-tiered approach.  See Wynn v. National Broadcasting Co., Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002) (noting that the majority of courts prefer this approach); see also Thiessen, 267 F.3d at 1102-03 (discussing three different approaches district courts have used to determine whether potential plaintiffs are "similarly situated" and finding that the ad hoc approach is arguably the best of the three approaches); Hipp v. Liberty Nat. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) (finding the two-tiered approach to certification of § 216(b) opt-in classes to be an effective tool for district courts to use).  Under this approach, the district court makes two determinations, on an ad hoc, case-by-case basis.  The court first makes an initial "notice stage" determination of whether plaintiffs are similarly situated, determining whether a collective action should be certified for the purpose of sending notice of the action to potential class members.  See, e.g., Thiessen, 267 F.3d at 1102.  For conditional certification at this notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that "the putative class members were together the victims of a single decision, policy, or plan."  Id.

4

at 1102. The standard for certification at this stage is a lenient one that typically results in certification. Wynn, 234 F. Supp. 2d at 1082.

The second determination is made at the conclusion of discovery, usually on a motion for decertification by the defendant, utilizing a stricter standard for "similarly situated." Thiessen, 267 F.3d at 1102. During this second stage analysis, the court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit. Id. at 1103.

Although Defendants acknowledge that some courts have applied this two-stage analysis, they argue that the Court should consider Rule 23 requirements for commonality. Plaintiffs' claim, however, is brought as a collective action under the FLSA, not as a class action under Rule 23. As noted in Thiessen, Congress chose not to apply the Rule 23 standards to collective actions under the ADEA and FLSA, and "instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 . . . would effectively ignore Congress' directive." 267 F.3d at 1105. See also Wertheim v. Arizona, 1993 WL 603552, *1 (D. Ariz. Sept. 30, 1993) ("The requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23 of the Federal Rules of Civil Procedure. All that need be shown

5

by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.") (citations omitted). To determine whether potential plaintiffs are similarly situated and whether notice is appropriate, the Court will apply the two-tiered approach.

As noted above, the standard for certification at the notice stage is a lenient one. Plaintiffs meet their burden of showing that all BSEs are similarly situated with respect to their FLSA claim: all BSEs share a job description, were uniformly classified as exempt from overtime pay by Defendants and perform similar job duties. Defendants do not dispute that Plaintiffs meet their burden under this lenient standard.

Instead, Defendants argue that this motion should be decided under the stricter second stage analysis. According to Defendants, extensive discovery has been conducted: Plaintiffs have received over 40,000 pages of documents in response to 116 requests and have deposed sixteen witnesses. Defendants contend that the evidence[4] shows that BSEs are not similarly situated: they are more than 2,500 white-collar employees who work in widely varying jobs in

---

[4] Part of the evidence Defendants rely upon is thirty-nine declarations from its employees, all of whom are potential collective action members. Plaintiffs move to strike these declarations, arguing that they were obtained improperly and in violation of the California Rules of Professional Conduct; in addition, Plaintiffs argue that the declarations should be excluded because Defendants failed to disclose them in their discovery responses. Plaintiffs' motion to strike is denied as moot. Plaintiffs meet their burden at the notice stage, and thus the Court need not consider the declarations at this time.

6

thirty-eight States and in multiple lines of businesses.  Business Systems Consultants levels two and three are overtime-exempt, have salaries starting at $43,1000, and are not bonus-eligible; Business Systems Consultants levels four through six have salaries ranging up to $112,500 and are bonus-eligible; level 6 even includes a Corporate Vice President.  Defendants further argue that the employees at issue are subject to every permutation of the executive, administrative, professional and computer professional exemptions, and therefore a conditional class will not promote judicial efficiency.

Defendants cite Pfohl v. Farmers Ins. Group, 2004 WL 554834, *3 (C.D. Cal. Mar. 1, 2004), to support their argument that the Court can, and should, proceed to the second stage of the two-tiered analysis.  In Pfohl, the court proceeded directly to the second stage and weighed relevant factors to determine whether the plaintiffs there were similarly situated.  But, before proceeding to the second stage, the court noted that "the parties did not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." Id.  Here, although volumes of paper have been produced and over a dozen witnesses deposed, Plaintiffs state that discovery is nowhere near complete.  After filing their reply, Plaintiffs submitted additional relevant information, which Defendants had only recently produced.  Even Defendants do not contend that discovery on the issue of certification is complete; Defendants only contend that discovery has been extensive and that additional discovery will not change the facts or analysis that BSEs are not similarly situated.

7

To apply the second-tier heightened review at this stage would be contrary to the broad remedial policies underlying the FLSA.  In Thiessen, the district court conditionally certified the class "during the course of discovery"; it was only at the conclusion of discovery that the court applied the heightened second-tier review. 267 F.3d at 1103.  This Court, too, will conditionally certify the collective action for the purpose of sending notice of the action to potentially similarly situated employees.  After discovery is complete, Defendants can move for decertification, and the Court will then apply the heightened second-tier review.

A.  Proposed Notice and Opt-in Form

Although the Court conditionally certifies the collective action, it does not approve the notice and opt-in form Plaintiffs prepared.  Nor does the Court approve the notice and opt-in form Defendants prepared.

Defendants' proposed "Responsibility For Costs and Fees" section could be misleading; potential plaintiffs could believe that, if Defendants prevail, plaintiffs will have to pay Defendants' attorneys' fees.  Any language in the notice regarding Defendants obtaining "an award of costs to be paid by the individual Plaintiffs" must define those costs and be clear that potential plaintiffs will not bear the burden of paying Defendants' attorneys' fees should Defendants prevail.

Defendants' description of the lawsuit, consisting of four sentences, is not adequate.  As Plaintiffs note, potential collective action members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so

8

that they can make informed decisions about whether to participate." Hoffman-La Roche, 493 U.S. at 170.  It would be difficult to make an informed decision on the limited information Defendants provide.  Plaintiffs' description of the lawsuit, however, is one-sided and argumentative.  Although Plaintiffs do use the word "allege," they use it only once in the beginning of each paragraph.  The description fails to note that Defendants deny they have violated the law.

The Supreme Court has instructed, "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.  To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."  Id. at 174.  Defendants' notice and form, though inadequate, are neutral.  Plaintiffs note that the Court has taken no position on the case, but they do so in a single sentence seemingly tacked onto the end of the notice.  Plaintiffs' form has a Court caption, which as Defendants note could be perceived as a judicial endorsement of this action; the caption should be omitted.

Plaintiffs' proposed 120 day deadline for potential class members to file their consents is too long; Defendants' proposed thirty day deadline is too short.  In Reab v. Electronic Arts, Inc., 214 F.R.D. 623, 632 (D. Colo. 2002), the court approved a sixty day opt-in period.  The Court sets a seventy-five day deadline.  The "Further Information" section approved in Reab is preferable to either party's proposed "Further Information"

9

section.[5]  Defendants are aware of their ethical duties, as well as the California Rules of Professional Conduct, which they must obey if they are contacted by potential plaintiffs seeking further information.

The forms should be returned to a third-party claims administrator, not to the Clerk of the Court.  The form should not contain a space for potential plaintiffs to check whether they want to be represented by Plaintiffs' counsel, by their own retained counsel or by themselves.

B.   Equitable Tolling for Potential Plaintiffs

The FLSA statute of limitations runs until a valid consent is filed.  29 U.S.C. § 256(b); Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757, 760 (9th Cir. 1981), abrogated on other grounds by Hoffman-La Roche, 493 U.S. 165.  Plaintiffs request that the Court equitably toll the limitations period on the claims of the FLSA collective action members from the date that the Complaint was filed on February 9, 2005, through the Court-set deadline for receipt of consents.  They argue that equitable tolling is warranted because similarly situated

---

[5]The approved section in Reab is as follows:

> Further Information
> Further information about this Notice, the deadline for filing a "Consent to Become A Party Plaintiff" or questions concerning this lawsuit may be obtained by writing, phoning or e-mailing Plaintiffs' counsel, James Schmehl, at Schmehl, Yowell & Mackler, P.C., at: [TO BE PROVIDED BY COUNSEL], or Defendants' counsel, Victor Schachter and Daniel McCoy, at Fenwick & West LLP, (650)494-0600, vschachter@fenwick.com, dmccoy@fenwick.com.

Id.

10

plaintiffs, through no fault of their own, have been unable to opt in to, or even learn of, the lawsuit.  Defendants refuse to produce contact information for potential collective action members, which, Plaintiffs claim, prevents Plaintiffs and their counsel from informing similarly situated potential plaintiffs about this case and their right to opt in.

But, as Defendants note, the two cases Plaintiffs cite to support equitable tolling are distinguishable.  In Partlow, the Ninth Circuit held that the district court could toll the statute of limitations under the FLSA for forty-five days to permit the class members who had earlier filed invalid consents, due to Plaintiffs' counsel's error, to execute proper consents.  Although this holding was based largely on the court's finding that "it would simply be improper to deprive the consenting employees of their right of action," the court also pointed out that the defendant was notified of the claims of the consenting employees within the statutory period because they had filed the improper consents.  645 F.2d at 761.  In Owens v. Bethlehem Mines Corp., 630 F. Supp. 309, 313 (W.D. Va. 1986), the court, relying on Partlow, found that equitable tolling was warranted because it had delayed ruling on the plaintiffs' certification motion for over a year.

In their reply, Plaintiffs do not address Defendants' argument that the cases they cited were inapposite.  Instead, Plaintiffs cite a new case where the defendant refused to provide contact information for former employees and the district court granted equitable tolling.  See Baldozier v. Am. Family Mut. Ins. Co., 375 F. Supp. 2d 1089, 1093 (D. Colo. 2005).  Nonetheless, the Court

11

finds that, under the law of this circuit, equitable relief is not proper in this case.

II. Corrective Notice

After this action was filed, Defendants instructed their employees to retain documents relating to their work. A document pertaining to this litigation (the Q&A document) was attached to the document retention instructions sent to managers and employees, some of whom were potential plaintiffs. Defendants state that approximately one hundred out of 2,600 BSEs received the Q&A document. Plaintiffs contend that the document was widely disseminated and that hundreds or thousands of potential collective action members were exposed to the information contained in the Q&A document. According to Plaintiffs, the Q&A document, which answers such questions as, "Who is being sued," "What does she want," "If I want to participate in the lawsuit, will that affect my job," "Why do I have to save documents," and "Can I trust the lawyers who are suing Wells Fargo," contains misleading, deceptive and coercive statements. See Belt v. Emcare, Inc., 299 F. Supp. 2d 664, 668 (2003) (recognizing that statements in a letter, encouraging potential class members not to join a class action, sent from an employer to its employees have heightened potential for coercion based on the employer-employee relationship). Plaintiffs request that the Court allow Plaintiffs to issue a corrective notice containing Plaintiffs' answers to the questions posed by the Q&A document. In addition, Plaintiffs request that the Court prevent Defendants from communicating with potential and actual plaintiffs concerning this litigation and require Defendants to identify each

12

individual who received the Q&A document and describe in detail all communications with any potential collective action member related to the Q&A document.

As Plaintiffs acknowledge in their reply, however, pre-certification communications with potential collective action members are generally permitted. See Gulf Oil v. Bernard, 452 U.S. 89, 100 (1981). In Gulf Oil, the Supreme Court noted that an order preventing counsel from communicating with potential class members "involved serious restraints on expression." 452 U.S. at 104. Thus, an order limiting communications between parties and potential collective action members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101. While finding that a district court cannot issue an order prohibiting communication between potential plaintiffs and counsel based on the mere possibility of abuse, the Court recognized that district courts have "both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." Id. at 100.

Plaintiffs cite several cases where district courts have employed their broad authority to remedy improper communications and ordered that corrective notices be sent and prohibited future communication. Plaintiffs contend that this case is directly analogous to Pollar v. Judson Steel Corp., 1984 U.S. Dist. LEXIS 19765 (N.D. Cal. Feb. 3, 1984). After finding that improper pre-certification communications caused confusion concerning potential

13

class members' rights, the court in Pollar prohibited the defendants from further communication with any class member on issues related to the litigation, ordered the defendants to turn over to class counsel all written communications from potential class members and ordered the defendants to pay for corrective notice. But, as Defendants point out, the defendants in Pollar caused confusion concerning potential members' rights by running advertisements in newspapers regarding an affirmative action program for women, without disclosing the existence of the class action litigation. Here, the Q&A document discloses the litigation, albeit in an allegedly misleading and coercive fashion.

Mevorah v. Wells Fargo Home Mortgage, Inc., 2005 U.S. Dist. LEXIS 28615 (N.D. Cal. Nov. 17, 2005), another case Plaintiffs cite from this district, is also distinguishable.[6] In Mevorah, the defendants' counsel contacted potential class members, interviewed them and then attempted to obtain depositions from them, without informing them that these depositions might be adverse to their interests. In addition, the defendants' counsel mischaracterized the litigation, giving potential class members the mistaken impression that if the lawsuit were successful they would no longer receive commissions and instead would be paid an hourly wage. Here, although the answer to at least one hypothetical question in Defendants' Q&A document does not actually answer the question, Defendants do not mischaracterize the litigation. Furthermore, as

---

[6]As Plaintiffs note, Defendants' argument that Plaintiffs cannot rely on this case because a notice of appeal was filed on December 14, 2005, is not supported by the case Defendants cite.

14

Defendants note, in Mevorah, a potential class member submitted a declaration that she agreed to be interviewed by defense counsel because she was misled into believing that she would lose her commissions if the lawsuit was successful. Despite being provided the opportunity to do so, Plaintiffs have not deposed any of the potential collective action members who received the Q&A document to determine whether they were misled or coerced.

The Court finds that the Q&A document is not sufficiently misleading or coercive to justify the relief sought. It informs potential collective action members that it is their decision whether to speak to any lawyer that contacts them and that, if they decide to speak to Plaintiffs' attorneys, they will not be retaliated against. It reiterates that their jobs will not be affected by participating in the lawsuit or by speaking to Plaintiffs' counsel. As Defendants note, there is nothing improper about telling potential collective action members, at this point in the litigation, to speak with their manager or an HR representative if they want to learn more about the lawsuit. See Parks v. Eastwood Ins. Servs., Inc., 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (finding that sending an internal memorandum to employees, before the employees opted in to the collective action, which discussed the litigation and suggested that employees direct questions to the employer's general counsel, was permissible). And, like the memorandum in Parks, the Q&A document does not give legal advice, does not suggest retaliation if employees opt in, and does not undermine any notice given by the Court. Id.

15

The Court finds insufficient justification to prohibit Defendants from contacting potential collective action members; nor does the evidence justify a finding that Defendants violated the California Rules of Professional Conduct or the Business and Professions Code by sending the Q&A document. Because the Q&A document was not inherently misleading or coercive, and in light of the Hoffman-La Roche notice that will be sent to potential collective action members, the Court finds that sending the corrective notice prepared by Plaintiffs is not necessary. Plaintiffs' motion for a corrective notice is denied.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Plaintiffs' Motion for Approval of Hoffmann-La Roche Notice (Docket No. 45) and DENIES it IN PART. The Court conditionally certifies the class of BSEs so that notice may be sent and authorizes Plaintiffs to send notice to prospective collective action members; however, the Court does not approve the notice and form prepared by Plaintiffs or the alternative notice and form prepared by Defendants. The Court has prepared a notice and form for the parties to use, unless they are able to agree on an alternative notice and form within ten days of this order. Defendants will produce to Plaintiffs' counsel the names, addresses, alternative addresses, and all telephone numbers,[7] in Microsoft Excel format, of all BSEs, within ten days of this order. The Court will not equitably toll the limitations period on the claims of the FLSA collective action members from the date that

---

[7] Plaintiffs' request for the BSEs' social security numbers is denied.

16

the Complaint was filed on February 9, 2005, through the Court-set deadline for receipt of consents.  The Court DENIES Plaintiffs' Motion for Corrective Notice (Docket No. 114).  Defendants' Motion to strike portions of the Goldman declaration and to strike portions of Plaintiffs' motion for notice (Docket No. 72) and Plaintiffs' Motion to Strike Defendants' Declarations of Potential Class Members (Docket No. 93) are also DENIED.[8]

IT IS SO ORDERED.

Dated:  3/28/06

*Claudia Wilken*

CLAUDIA WILKEN
United States District Judge

---

[8] To the extent that the Court relied upon evidence to which there is an objection, the parties' objections are overruled.  To the extent that the Court did not rely on such evidence, the parties' objections are overruled as moot.

17